IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>and<br><br>MAGALI VILLALOBOS,<br><br>Intervenor,<br><br>v.<br><br>RYAN'S POINTE HOUSTON, LLC<br><br>and<br><br>ADVANTAGE PROPERTY MANAGEMENT, LLC,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 4:15-cv-02782 |

**EEOC'S MOTION FOR SANCTIONS FOR SPOLIATION OF PAYROLL RECORDS AND PERSONNEL FILES**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Defendants Ryan's Pointe Houston, LLC and Advantage Property Management, LLC ("Defendants") failed to preserve **payroll records** and failed to preserve and/or destroyed **personnel files** used in Defendants' businesses from June 3, 2011, through January 31, 2013. Defendants' failed to preserve their own payroll records from June 3, 2011, through December 31, 2011; failed to preserve unredacted payroll records from its agent Creative Property Management Co. ("Creative") from January 1, 2012 through December 31, 2012; and failed to preserve and/or destroyed personnel files for the staff at the four Houston apartment complexes which would have included performance evaluations and/or discipline documents, as well as dates of hire and

termination for all Advantage employees. As a result of these failures, the EEOC seeks an order permitting EEOC to introduce evidence of, and arguments about, the Defendants destruction of personnel files and employment records; what such records would have shown; and possible motives for the destruction; and a permissive inference, at trial, that had the personnel files been preserved – especially those of Villalobos – they would have shown that no such performance issues as alleged by Defendants were ever recorded.

The number of employees an employer employs determines the amount of recoverable damages under Section 1981a. Because Defendants wholly failed in their preservation obligations, the EEOC is unable to determine whether Section 1981a damages are limited to $50,000 or $100,000Defendants' own personnel files – as opposed to payroll or personnel files maintained by Defendants' agents – Creative and ProSource Management Solutions ("ProSource") – are particularly relevant to Regional Supervisor Bobbie Dusek's statement that she terminated Villalobos for poor performance (while also asserting Defendants' owner and chief operating officers instructed her to terminate Villalobos because of her national origin and pregnancy). EEOC thus seeks spoliation sanctions against Defendants. The personnel files are at issue to liability in addition to damages.

## I.     Factual Background

### A. Defendants' Were on Notice of Villalobos Likely Claim and EEOC Charge.

Magali Villalobos' then-counsel, Andrew Weisblatt, sent a demand letter to Defendants notifying them of her claims of discrimination on July 25, 2012. (Ex. 1 at EEOC 67). On or about September 10, 2012, Villalobos filed a charge of discrimination with the EEOC. (Ex. 2). On September 17, 2012, EEOC notified Defendants of the charge, and explained EEOC's recordkeeping regulations, including the requirement to maintain relevant employment records

until the final disposition of the charge or action. (Ex. 3). On January 9, 2013, the EEOC investigator was set to interview Bobbie Dusek ("Dusek") and other witnesses at Defendants' location in Houston. About 20 minutes before that interview was set to begin, Defendants informed Dusek that they had eliminated her position, presented her with a severance agreement to consider, and offered that if she resigned and accepted the severance, they would tell the EEOC that she was no longer employed by the Defendants. (Ex. 4). Unsurprisingly, Dusek filed her own charge of discrimination and swore out an affidavit against the Defendants the following day. (Ex. 5).

On January 15, 2013, EEOC issued a subpoena to the Defendants seeking, for the period of "January 1, 2010 to the present,"[1] a variety of documents including Dusek's personnel file and any document retention policies regarding the preservation of, *inter alia*, personnel files. (Ex. 6). Defendants responded to the subpoena on January 23, 2015 and ultimately produced Dusek's personnel files from Creative and ProSource, but not their own personnel file for her. (Ex. 7). Similarly, EEOC subpoenaed Villalobos' personnel file from Creative; however, Defendants have never produced any other personnel file. (Ex. 8). This is despite testimony from both Dusek and Rebecca Johnson (Villalobos' successor) that Dusek maintained personnel files and that they were kept in the manager's office at Ryan's Pointe. (Exs. 9, 10). During the EEOC investigation and litigation, EEOC sought payroll records and personnel files from Defendants related to both Villalobos' charge and the charges filed by Rebecca Johnson ("Johnson") and Dusek (all three charges became part of a single investigation). On August 6, 2014, EEOC issued letters of determination. (Ex. 11). EEOC filed this lawsuit on September 24, 2015. (Dkt. No. 1).

**B. Defendants had no document retention policies.**

[1] Defendants acquired Ryan's Pointe in June 2011.

In response to the EEOC subpoena in January 2013, Defendants stated, "Respondent does not have any ongoing document retention policies as requested." (Ex. 7). This was true for both paper and ESI documents. The EEOC's subpoena contained preservation obligation language as well. (Ex. 8).

**C. Defendants Failed to Issue and/or Monitor Litigation Holds.**

Although defense counsel may have ordered the issuance of a broad litigation hold to preserve evidence, Defendants did not properly specify custodians or explain the nature and scope of the potential litigation, or even revise the litigation hold as Johnson and Dusek filed their own charges of discrimination. Nor did Defendants monitor compliance as this litigation progressed. The consequences of Defendants failure to have any document retention policies (or to preserve records) is demonstrated by the fact that Defendants, by their own admission, could not locate their 2011 payroll records. (Ex. 12). Defendants utilized Texas Bookkeepers to do their bookkeeping and make their quarterly and annual reports regarding unemployment insurance to both the Texas Workforce Commission and IRS from June 2011 through at least December 31, 2011. (Ex. 13). Defendants have produced 940 and 941 reports for 2011, albeit some after the close of discovery. (*Id.*).

**D. Incomplete Payroll Records**

Defendants produced payroll records from Creative and ProSource, along with 940 and 941 reports, for the entirety of 2012. However, the records from Creative were heavily redacted and lacked dates of hire and termination and also are missing certain information. (Ex. 14). At the discovery hearing in April 2024, defense counsel was unsure whether he still possessed the unredacted copies of the Creative payroll records. (Dkt. No. 140 at 45:15-17). If he has unredacted copies, he has failed to produce them.

The records from ProSource also lacked hiring and termination information. Separately, paper email records produced by the Defendants identify about a dozen employees who were terminated at various times throughout 2012. (Ex. 16). But even those documents often lack a specific date for the actual termination. *Id.* Defendants moved their payroll to ProSource effective May 1, 2012; however, for the remainder of the second and all of the third and fourth quarters, Defendants continued reporting that Advantage paid many employees in those quarters, in addition to using ProSource to pay other of its employees. (Ex. 17). Also, while Dusek was hired on February 9, 2012, the Creative records lack any mention of her as an employee; however, she is identified in the later ProSource records. (Exs. 14, 15). The same is true for Leon Blum, who managed the make-ready crew(s). (*Id.*). Additionally, Philip Oshiro appears to have been employed by Defendants because he had an Advantage email address like Dusek's; however, he does not appear in either the Creative or ProSource records. (Ex. 18). After the close of discovery in 2024, Defendants produced a list of what purported to be active employees from G&A Partners (the successor entity to ProSource) that included dates of hire. (Ex. 19). However, examination of those records reveals that the hire dates conflict with the dates of hire contained in the Creative records. (*Cf.* Ex. 19 *with* Ex. 16).

Further, Defendants also acquired an apartment complex in Las Vegas (Mirabella Las Vegas) the month after it purchased Ryan's Pointe whose employees could count toward the number of employees for purpose of determining Section 1981a damages. Defendants have never indicated whether the staff at that complex was paid through Advantage, ProSource or even Creative. It is also unclear whether the employees listed on the 940/941's for 2012 were paid through Advantage, ProSource or Creative. For clarity, the following is a chart of the dates of acquisition for the Defendants' apartment complexes:

| Date of Acquisition | Complex | Date of Sale |
|---|---|---|
| April 29, 2011 | Crofton Place | October 14, 2014 |
| June 3, 2011 | Ryan's Pointe | October 8, 2015 |
| July 1, 2011 | Mirabella Las Vegas | September 4, 2014 |
| August 9, 2011 | Ravenwood | September 25, 2018 |
| February 10, 2012 | Hammerly Oaks | August 31, 2015 |

In 2011, some of Defendants' complexes were managed by third-party vendors. In August and November 2011, Defendants signed management agreements with Creative for Creative to manage Ravenwood and Crofton Place, respectively. (Exs. 20, 21). However, Creative's 30(b)(6) witness – William "Bill" Elsbree ("Elsbree) was confused as to whether these agreements called for Creative to employ the staff at its apartment complexes or whether Advantage employed them. (Ex. 22 at 41-45). In any event, by late April 2012, the staff at all four Houston complexes were employed by Advantage.

The Creative payroll records from January 1, 2012, shows the following:

| Complex | # of Employees |
|---|---|
| Ryan's Pointe | 19 Employees |
| Hammerly Oaks | 20 Employees |
| Ravenwood | 17 Employees |
| Crofton Place | 10 Employees |
| **Total:** | **66 Employees** |

These 66 employees does not include the additional employees identified on Defendants' 940 and 941 for 2011, nor does it include any employees at the Mirabella Las Vegas complex. The EEOC extracted the names from both the Creative and ProSource reports and identified 102 unique names for 2012, without including the additional employees identified on Defendants' 940/941 reports, the employees employed at Mirabella Las Vegas, or individuals like Philip Oshiro who had an Advantage email address.

Defense counsel's admission at the discovery hearing in April 2024, that his firm had lost the unredacted copies of the Creative payroll records has prevented the EEOC from determining the extent of Defendants' potential Section 1981a liability.

**E. Personnel Files**

Defendants have no explanation as to why they: (1) never maintained their own personnel files; and (2) failed to preserve the personnel files Dusek testified she maintained. Because Villalobos allegations arose in 2012, under Title VII, Defendants should have retained records for the current year (2012) and the preceding year (2011). EEOC regulations require that where a charge of discrimination or action has been filed, "the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action." 29 C.F.R. § 1602.14. The regulation further details that the term "personnel records relevant to the charge" includes personnel or employment records relating to the aggrieved person, and to all other employees holding positions similar to that held by the aggrieved person and application forms or test results. *Id.* The regulation defines personnel or employment records as including, but not limited to, requests for reasonable accommodation, application forms submitted by applicants, and records dealing with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay, compensation, tenure, selection for training or apprenticeship, or other terms of employment. *Id.*

When Defendants responded to the EEOC subpoena in early 2013 – and while they were still operating apartment complexes in Houston – they failed to produce the records maintained by Dusek and failed to explain why the third-party personnel files were produced but not their own internal records. In response to the inquiry about personnel policies and procedures, the Defendants stated, "all employment policies are created and maintained by ProSource

Management Solutions." (Ex. 7). However, this is untrue since, as indicated above, Defendants only began using ProSource as of May 1, 2012, well after Villalobos' termination on March 21, 2012. Furthermore, Elsbree – the 30(b)(6) witness for Creative – testified that Creative never employed any of the staff at Ryan's Pointe. (Ex. 22 at pg. 30). Therefore, any records relating to Ryan's Pointe staff during this period as well as at the other complexes, should have been separately maintained by Defendants at a minimum and/or Creative. Both Dusek and Johnson also testified that there were personnel files at Ryan's Pointe for its staff and described their location. (Exs. 9, 10). Even as late as June 2016, counsel for Defendants described to counsel for the EEOC that the Defendants were going through physical boxes related to their apartment complexes. (Ex. 23).

The personnel file for Villalobos is particularly key because at least one of the forms attached to the "backup for Maggie" email was a personnel change form which is a different form than the one contained in Creative's file for Villalobos. (Exs. 8 at Pg. 17, 24). This is a handwritten document. (Ex. 24). The termination form in Creative's file contains a "?" in response to the question, "If fired, please explain final incident." (Ex. 8). In contrast, the personnel change form produced during the investigation contains several reasons for Villalobos' termination. (Ex. 24).

Also, on March 14, 2012, Dusek emailed Mike Treiman ("Treiman") an operation policy manual and stated that she was half done with a personnel manual and "almost have original form book completed." (Ex. 25). Defendants produced the operation policy manual but not the personnel manual. After the close of discovery, Defendants produced an employee handbook; however, that was dated from 2013. (Ex. 26).

Finally, in early 2012, when Defendants were using Creative to handle their payroll, they faxed the timesheets for the Ryan's Pointe staff to Creative and on each timesheet wrote the salary

and/or hourly rate of pay and corresponding W-4 information for each employee on the timesheet. (Ex. 27). Creative's own records show that Villalobos did not complete a W-4 for them until January 12, 2012, and, when she did so, she was Employee No. 22. (Ex. 8 at pg. 2).

Despite these facts, Defendants never identified these types of documents in any litigation hold nor did they continue monitoring compliance after any legal hold was issued.

## II. Legal Analysis

"Spoliation of evidence is the destruction or the significant and meaningful alteration of evidence." *Miller v. Michaels Stores, Inc.*, 98 F.4th 211, 219 (5th Cir. 2024) (quoting *Van Winkle v. Rogers*, 82 F.4th 370, 374 (5th Cir. 2023)); *see also Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015); *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F.Supp.2d 598, 612 (S.D. Tex. 2010). The Fifth Circuit permits an adverse inference against the spoliator or sanctions against the spoliator only upon a showing of "bad faith" or "bad conduct." *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005). A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant. *Rimkus*, 688 F.Supp.2d at 612. Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence. *Guzman*, 804 F.3d at 713 (citing *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998)). "Under the spoliation doctrine, a jury may draw an adverse inference that a party who intentionally destroys important evidence in bad faith did so because the contents of those documents were unfavorable to that party." *Whitt v. Stephens Cnty.*, 529 F.3d 278, 284 (5th Cir. 2008); *see also Russell v. Univ. of Tex.*, 234 F. App'x 195, 207 (5th Cir. 2007); *Vick v. Tex. Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975).

A common-law spoliation claim has three elements: (1) the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the moving party must show that the spoliating party acted in bad faith. *Coastal Bridge Co., L.L.C. v. v. Heatec, Inc.*, 833 Fed. App'x 565, 574 (5th Cir. 2020). Here, the first element is established as Defendants themselves identified and produced some of these documents after receipt of Villalobos' EEOC charge.

Intentionality is often folded into the bad faith element for analytical purposes. *See, e.g.*, *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 Fed. App'x 565, 574 (5th Cir. 2020) (describing the second element as "the evidence was intentionally destroyed with a culpable state of mind"). Notably, many courts have found that the element of bad faith is satisfied where the destruction of documents violates generally applicable EEOC regulations. *See, e.g., EEOC v. Res. for Human Dev. Inc.*, 843 F.Supp.2d 670, 672 (E.D. La. Feb. 10, 2012) (finding the destruction of interview notes without explanation, despite employer's own document retention policy was a violation of Section 1602.14); *Barker v. La. Sch. for Math*, No. 1-21-cv-04419, 2024 U.S. Dist. LEXIS 71714, at *28 (W.D. La. March 8, 2024) (citing Section 1602.14 as a statutory duty to preserve evidence); *Austrum v. Fed. Cleaning Contractors, Inc.*, 149 F.Supp.3d 1343, 1348 (S.D. Fla. 2016) (finding bad faith where application was destroyed in violation of EEOC regulations); *Wood v. Pittsford Cent. Sch. Dist.*, No. 07-0892-cv, 2008 WL 5120494, at *2 (2d Cir. 2008) (destruction of records in violation of regulations satisfies *mens rea* requirement); *Waters v. Genesis Health Ventures, Inc.*, 400 F.Supp.2d 814, 820-21 (E.D. Pa. 2005) ("We will allow Plaintiff to offer evidence of Defendant's failure to retain job applications for the [EEOC-regulation-]required period."); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1418-19 (10th Cir. 1987) (plaintiff was "entitled to the benefit of a presumption that the destroyed documents would have bolstered her case"); *but see Lawson*

*v. MHC Minden, L.P.*, No. 16-0414, 2018 U.S. Dist. LEXIS 154764, at *21-22 (W.D. La. Sept. 11, 2018) (acknowledging that defendant's shredding of interview notes probably violated Section 1602.14 but declining to infer intent because the destruction occurred before the filing of any EEOC charge).

Where a court finds spoliation of evidence, sanctions may include, *inter alia*, dismissal of the case, an adverse inference or rebuttable presumption, exclusion of testimony, striking pleadings, or an award of fees and costs. *Arcadian Health Plan, Inc. v. PSO Health Servs., LLC*, No. A-06-CA-1005 RP, 2007 U.S. Dist. LEXIS 118063, at *16-17 (W.D. Tex. Sept. 18, 2007).

**A. Loss of Payroll Records**

Defendants' loss of payroll records poses the threat of a significant uncurable prejudice to EEOC. Defendants produced hard copies of these records but then redacted portions of the records which would have provided the dates of termination for employees from January 1, 2012, through April 30, 2012. Defendants' obligation to take steps to preserve its payroll records commenced at the earliest, in July 2012 upon receipt of the demand letter, or at the latest in September 2012 when the charge was filed. Defendants' counsel has admitted Defendants failed to preserve the records. This admission is sufficient to satisfy the bad faith element.

It is unclear if Defendants have ever produced an exhaustive list of all Advantage employees paid during 2012 (much less during 2011). As noted *supra*, while Defendants suggest Dusek has always been an Advantage employee, it has no explanation for why she is not included in the Creative payroll records from early 2012. Similarly, there is no explanation for why Philip Oshiro has an @aaadvantagemanagement.com email address like Dusek but was never listed as an Advantage employee. And, finally, Defendants have no explanation for who the additional 12 or 13 employees on the IRS 940 and 941's for the third and fourth quarters of 2012 are.

**B. The Remedy for Failing to Preserve Payroll Records**

While spoliation law offers a post-verdict remedy, caselaw does provides an applicable remedy which has a direct impact during the litigation. In *Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202 (1997), the Court concluded that if there is an employment relationship between the employee and the employer, the employee is counted as an employee of the employer for each working day after the person's arrival until his or her departure. *Id.* at 211. To make this determination, the Court looks only to the existence of an employment relationship between the employee and the employer. *Walters*, 519 U.S. at 207. This means that "all one needs to know about a given employee for a given year is whether the employee started or ended employment during that year and, if so when. He is counted as an employee for each working day after arrival and before departure." *Id.* at 211 (*emphasis added*). Additionally, employees are included in the calculation of the number of employees regardless of whether they received compensation during the requisite period or only worked part-time or only worked certain days of the week. *Faulkner*, 174 Fed. Appx. 525, 528 (11th Cir. 2006); *Bennett v. White Tiger*, Civil Action No. 2:12-cv-00171, 2013 U.S. Dist. LEXIS 6090, *7-8 (S.D. Ohio Jan. 15, 2013). Thus, so long as the evidence on file shows the term of an individual's employment with Defendants, he or she will be counted as an employee for that entire period, without regard to whether their received compensation during the entirety of that period.

As the Court in *Walters* noted, the issue is when the employment relationship began and ended. Each person is counted for the entirety of that period. *Id.* at 211. It does not matter whether the employer compensated the employee during certain periods of the employment relationship; or even if they seemly disappear from the records periodically; those employees are still included

in the calculation of the number of employees. *Bennett*, 2013 U.S. Dist. LEXIS at *7; *Latimer v. Wise*, 193 F. Supp. 2d 899, 903-04 (E. D. Tex. 2001).

In other words, the EEOC should be permitted to count all employees from 2012 and only remove from that list those for whom the Defendants have provided a termination date or other, irrebuttable evidence of their final date of employment, thus bringing Defendants' total number of employees to more than 100 employees.

**C. Destruction or Loss of Personnel Files**

Based on the testimony of Johnson and Dusek, Defendants, through them, maintained its own personnel files. Their testimony is bolstered by the handwritten or non-ESI attachments from the "backup for Maggie" email which suggests that at least some records consistent with the type of those found in a personnel file were created (at some point in time) by Dusek. Moreover, in January 2012, when transmitting the timesheets for the Ryan's Pointe staff, Defendants wrote on each timesheet the hourly rate and/or W-4 information for each employee. Thus, Defendants clearly maintained their own employment records in order to be able to convey that information to Creative. While Defendant has produced some personnel documents from their agents, they records are incomplete and, clearly missing information. Dusek's purported verbal and written warning of Villalobos were not in any of the personnel records produced by Defendant. They should have been contained in her employment file as well as the personnel change form from her termination on March 21, 2012. Again, Defendants failed in its obligation to maintain these records and unduly prejudiced the EEOC. The EEOC will not be able to confront the witnesses with Defendants' own records.

**D. The Prejudice Cannot Be Cured**

With respect to Villalobos' claims, there simply is no other data upon which the EEOC can equally rely in proving its case. Creative did not fire Villalobos, Defendants did. The only termination form in Creative's file has a "?" for the answer to the question, "If final incident, please explain." The EEOC would also have dates of hire and termination of all employee tat year had the Defendants maintained, preserved, and produced the relevant personnel files.

**E. Defendants Acted in Bad Faith**

First, a finding of bad faith is warranted here based upon Defendants' failure to comply with federal regulations, which require all personnel records to be maintained for at least one year, and more for terminated employees. 29 C.F.R. § 1602.1, and through final disposition of the charge or litigation if a charge is filed, *id.* Here Defendants do not dispute that their failure to preserve personnel files occurred after the receipt of Villalobos' charge of discrimination. *EEOC v. Res. for Human Dev. Inc.*, 843 F.Supp.2d 670, 672 (E.D. La. Feb. 10, 2012) (finding the destruction of interview notes without explanation, despite employer's own document retention policy was a violation of Section 1602.14).

Defendants destroyed or lost the documents long after it had the notice of charge. As late as June 2016, defense counsel was describing her clients going through boxes related to the operation of the apartments to look for laptops. This is evidence that, at that time, Defendants still possessed the business records from Ryan's Pointe and the other apartment complexes. Both Dusek and Johnson not only testified under oath that the personnel files were maintained but also described the location where they were kept.

In other words, the disappearance of the personnel files cannot credibly be explained except by finding an affirmative act by Defendants in bad faith. Defendants have no credible explanation for how the documents were lost or destroyed, or that the documents existed and were not

produced. Even if the Defendants issued a litigation hold, they still failed to monitor Defendants' compliance with their preservation obligations and failed to properly collect the documents. In these circumstances, *Lou v. Lopinto*, No. 21-80 Section "D" (2), 2022 U.S. Dist. LEXIS 200240, at *16-17 (E.D. La. Nov. 2, 2022) is instructive. There, where internal affairs documentation disappeared, the Court noted, "Thus, bad faith may be inferred by evidence that a party has misrepresented the existence of documents or allowed the destruction of documents and had explanations of spoliation that were not credible." *Id.* Here too, Defendants' willful lack of knowledge, in the face of testimony from Villalobos' own manager and replacement, is simply not credible and the mysterious disappearance of all personnel files maintained by the Defendants – and not third-party vendors – can be explained only by an affirmative act in bad faith.

**F. Sanctions for the Destruction of Personnel Files**

In light of Defendants' destruction of personnel files, EEOC seeks the following: (1) a finding of bad faith in failing to maintain payroll and personnel records; (2) an order permitting EEOC to introduce evidence of, and arguments about, the Defendants destruction of personnel files and employment records; what such records would have shown; and possible motives for the destruction; and (3) a permissive inference, at trial, that had the personnel files been preserved – especially those of Villalobos – they would have shown that no such performance issues were ever recorded. *Winkle v. Rogers*, 82 F.4th 370, 378 (5th Cir. 2023) (allowing the use of a permissive inference at trial where a party allowed a tire believed to be the cause of an accident to be destroyed after it reasonably anticipated litigation and citing approvingly to *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 157 (4th Cir. 1995)).

**III. Conclusion**

Based on the foregoing, EEOC respectfully requests the Court to enter spoliation sanctions for the purposes of trial as described herein.

Respectfully submitted,

/s/ Lloyd S. van Oostenrijk
Lloyd S. van Oostenrijk
Senior Trial Attorney
Attorney-in-Charge
Texas Bar No. 24056467
S.D. No. 695844
N. Joseph Unruh
Trial Attorney
Texas Bar No. 24075198

Equal Employment
Opportunity Commission
1919 Smith Street, 7th Floor
Houston, Texas 77002
(346) 327-7718
(713) 651-7995 [facsimile]

CERTIFICATE OF CONFERENCE

On the 30th day of May 2024, the undersigned counsel conferred with opposing counsel concerning the relief sought in this Motion and was advised that opposing counsel opposed this Motion.

*/s/ Lloyd S. van Oostenrijk*
Lloyd S. van Oostenrijk

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Plaintiff's Motion for Sanctions For Spoliation Of Payroll Records And Personnel Files was filed via the Court's ECF system on May 31, 2024, and through that system, was served on Defendants and Intervenor's counsel of record. In addition, a copy of this filing was served by electronic mail on May 31, 2024, on counsel of records, as follows:

**Thomas M. Pickford**
Counsel for Defendants
**HOOVER SLOVACEK LLP**
Galleria Tower II
5051 Westheimer, Suite 1200
Houston, Texas 77056
pickford@hooverslovacek.com

**David Langenfeld**
Counsel for Intervenor Magali Villalobos
**LEICHTER LAW FIRM, P.C.**
1602 East 7th Street
Austin, Texas 78702
david@leichterlaw.com

/s/ Lloyd S. van Oostenrijk
Lloyd S. van Oostenrijk

CERTIFICATE OF WORD COUNT

Pursuant to Section 16(c) of the Court's procedures, I certify that the accompanying brief, which was prepared using Times New Roman 12-point typeface, contains 4,409 words, excluding the parts of the brief exempted by the procedures. This certificate was prepared in reliance on the word-count function of the word processing system (Microsoft Word) used to prepare the document.

/s/ Lloyd S. van Oostenrijk