United States District Court
Southern District of Texas
**ENTERED**
January 21, 2025
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | § § § | |
| **Plaintiff,** | § § | |
| **and** | § § | |
| **MAGALI VILLALOBOS,** | § § | |
| **Intervenor,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. 4:15-cv-2782** |
| **RYAN'S POINTE HOUSTON, LLC, _et al._,** | § § § | |
| **Defendants.** | § | |

## <u>MEMORANDUM, RECOMMENDATION, AND ORDER</u>

Pending before the Court is Intervenor Magali Villalobos' ("Villalobos") Motion for Partial Summary Judgment (ECF No. 143), Defendant Ryan's Pointe Houston, LLC's ("Ryan's Pointe") Motion for Summary Judgment (ECF No. 144), and Plaintiff Equal Employment Opportunity Commission's ("EEOC") Motion to Exclude Expert Testimony of Defendants' Vocational Rehabilitation Consultant Joanna Vasquez (ECF No. 145), Motion for Sanctions for Spoliation of Payroll Records and Personnel Files (ECF No. 146), Motion for Partial Summary Judgment (ECF No. 154), and Motion for

Sanctions for the Spoliation of ESI[1] (ECF No. 166).[2]  Based on a review of the motions, arguments, and relevant law, the Court **RECOMMENDS** Villalobos' Motion for Partial Summary Judgment (ECF No. 143) be **GRANTED**, Ryan's Pointe's Motion for Summary Judgment (ECF No. 144) be **DENIED**, the EEOC's Motion to Exclude Expert Testimony of Defendants' Vocational Rehabilitation Consultant Joanna Vasquez (ECF No. 145) be **DENIED,** and the EEOC's Motion for Partial Summary Judgment (ECF No. 154) be **GRANTED**.  Further, the Court **DENIES** the EEOC's Motion for Sanctions for Spoliation of Payroll Records and Personnel Files (ECF No. 146) and **GRANTS IN PART and DENIES IN PART** the EEOC's Motion for Sanctions for the Spoliation of ESI (ECF No. 166).

## I.     Factual Background

On September 24, 2015, the EEOC filed this action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991.  (ECF No. 1).  The EEOC filed suit on behalf of Villalobos alleging unlawful employment practices for sex and national origin discrimination.  (ECF No. 3).  Villalobos is a United States citizen born in Mexico.  (ECF No. 154 at 13).  The EEOC alleges Ryan's Pointe and Advantage Property Management, LLC

---

[1] "ESI" is electronically stored information.
[2] On August 5, 2024, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72.  (ECF No. 178).

("Advantage") (collectively, "Defendants") discriminated against Villalobos based on her sex, as Villalobos was pregnant, and national origin, as Villalobos is Mexican, when they terminated her employment on March 21, 2012. (ECF No. 3 at ¶ 16).

In March 2011, California developers, Robert Hayman ("Hayman") and Michael Treiman ("Treiman") partnered to form business entities, including Hayman Advisors, LLC ("Hayman Advisors") and Hayman Advisors Real Estate, LLC ("HARE"). (ECF No. 154 at 10). In 2011 and 2012, Hayman, Treiman, through HARE, and Julian Blum ("Blum"), a Houston real estate developer, acquired apartment complexes—including Ryan's Pointe Apartments (the "Property"). (*Id.*). Blum is a minority partner. (*Id.*).

In April 2011, Hayman, Treiman, Blum, and Jim Hurd ("Hurd") formed Ryan's Pointe for the purpose of purchasing the Property. (*Id.*). Ryan's Pointe acquired the Property on June 3, 2011. (*Id.*). "Hayman served as the controlling partner and CEO of Ryan's Pointe through his majority interest Hayman Advisors, and, in turn, Hayman Advisors' principal ownership of Ryan's Pointe." (*Id.*). "Treiman was the company's president, COO, and general counsel." (*Id.*). "Blum, a part-owner who reported to Treiman, also served, at least initially, as Ryan's Pointe's asset/administrative manager, overseeing the Property's day-to-day operations." (*Id.* at 10–11). On or around

3

June 9, 2011, Hayman and Treiman formed Advantage for the purpose of managing the Property. (*Id.* at 11). "As with Ryan's Pointe, Hayman was Advantage's CEO and Treiman its president, COO, and general counsel." (*Id.*). Ryan's Pointe's "Restated and Amended Limited Liability Agreement, dated August 9, 2011, indicates that Advantage held a 1% ownership interest in Ryan's Pointe, and, along with Hayman, Treiman, and Blum, Advantage was a 'Manager' of its sister company." (*Id.*).

Villalobos began working at the Property before Ryan's Pointe purchased it. (ECF No. 154 at 13). Once Ryan's Pointe took ownership of the Property in June 2011, Villalobos was employed as an apartment assistant manager. (*Id.*). In 2012, Tawana Rowghani ("Rowghani"), apartment manager, was promoted to regional director and Villalobos became the new apartment manager after both Rowghani and Blum interviewed her. (*Id.*). Shortly thereafter, Rowghani was terminated. (ECF No. 144 at 7).

On February 9, 2012, Hayman, Treiman, and Blum hired Bobbie Dusek ("Dusek") to replace Rowghani as regional manager. (ECF No. 154 at 14). "In early 2012, Villalobos became pregnant [and Villalobos] first told Blum of her pregnancy." (*Id.*). Once Dusek was hired, Villalobos informed Dusek of her pregnancy. (*Id.*). On or about February 28, 2012, Dusek hired a headhunter to find a replacement for Villalobos. (*Id.*). On or about March 9, 2012—after

discussions with Treiman and approval from Hayman—Dusek offered Rebecca Johnson ("Johnson"), who is not Mexican, a position as apartment manager. (*Id.* at 14–15). On March 21, 2012, Villalobos was terminated. (*Id.* at 15).

With respect to the alleged discriminating statements, the EEOC claims "soon after Dusek's hiring, Hayman and Treiman instructed Dusek to 'change the demographics of the community and the staffing' and to 'start working toward' Villalobos' termination." (*Id.* at 14). "Dusek testified that she 'understood this to mean that I needed to hire someone who was petite, attractive, young and Caucasian,'" and that Hayman and Treiman wanted to replace Villalobos with "Ken and Barbie." (*Id.* at 8, 14).

## II.    Procedural History

On February 2, 2018, Defendants filed separate motions for summary judgment. (*See* ECF Nos. 70–71). On July 18, 2019, the United States District Judge granted Defendants' motions for summary judgment, finding Defendants did not discriminate against Villalobos, Villalobos was not qualified for her position, and Villalobos was terminated for poor work performance and lack of competence as property manager. (ECF No. 91). A final judgment followed, dismissing the claims against Defendants. (ECF No. 92).

5

The EEOC and Villalobos appealed the District Judge's decision. (ECF Nos. 93–94). On November 21, 2022, the Fifth Circuit reversed the decision granting Defendants' motions for summary judgment and remanded this suit for further proceedings. (ECF No. 107).

## III. Legal Standard

Federal Rule of Civil Procedure ("Rule") 56(a) instructs the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Talasek v. Nat'l Oilwell Varco, L.P.*, 16 F.4th 164, 168 (5th Cir. 2021) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A material fact is one that "might affect the outcome of the suit under the governing law." *Bazan ex rel. v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis omitted); *see Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021). "An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan*, 246 F.3d at 489 (emphasis omitted). The Court must view the evidence in a light most

favorable to the nonmovant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

The movant is tasked with the initial burden of informing the Court of the basis for the motion and pointing to relevant excerpts in evidence that demonstrate the absence of genuine issues of material fact. *See Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Celotex Corp.*, 477 U.S. at 323). The movant may also argue that the nonmovant failed to produce evidence in support of at least one element of a cause of action for which he bears the burden of proof. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

If the movant satisfies the initial burden, it shifts to the nonmovant who must produce evidence of a genuine factual dispute; he may not merely rest on the allegations in his pleading. *See Coastal Agric. Supply, Inc.*, 759 F.3d at 505 (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). The Court should not accept "[u]nsubstantiated assertions, improbable inferences, [or] unsupported speculation" as sufficient to carry the nonmovant's burden. *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). However, where there is evidence of a genuine factual dispute, such disputes are resolved in favor of the nonmoving party "when an actual controversy exists, that is, when both parties have submitted evidence of

contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999); *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017).  Further, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Baker v. Coburn*, 68 F.4th 240, 244 (5th Cir. 2023), *as revised* (May 19, 2023).

## IV.    Discussion

There are six motions pending before the Court: (1) Villalobos' Motion for Partial Summary Judgment (ECF No. 143); (2) Ryan's Pointe's Motion for Summary Judgment (ECF No. 144); (3) the EEOC's Motion to Exclude Expert Testimony of Defendants' Vocational Rehabilitation Consultant Joanna Vasquez (ECF No. 145); (4) the EEOC's Motion for Sanctions for Spoliation of Payroll Records and Personnel Files (ECF No. 146); (5) the EEOC's Motion for Partial Summary Judgment (ECF No. 154); and (6) the EEOC's Motion for Sanctions for the Spoliation of ESI (ECF No. 166).  Additionally, the Parties make objections to summary judgment evidence throughout their various pleadings, which will be addressed first.

### A.    Defendants' Objections to Summary Judgment Evidence

Defendants make four objections to and move to strike the following summary judgment evidence: (1) the EEOC's Exhibit 14 on the basis of

hearsay; (2) the EEOC's reliance on an affidavit by Villalobos; (3) the EEOC's Exhibit 36, pages 19–28 and 30–31, on the basis of multiple levels of hearsay; and (4) the EEOC's Exhibit 36, pages 19–28 and 30–31, on the basis of failure to authenticate.  (ECF No. 161 at 18–19).

### 1.    EEOC's Exhibit 14

Defendants object to the EEOC's Exhibit 14, consisting of the EEOC investigators' notes from an interview with Dusek (ECF No. 154-15) on the basis of hearsay.  (ECF No. 161 at 18).  Defendants argue Dusek was not an employee of Advantage at the time of the interview and the notes are not Dusek's, but the EEOC investigators' notes.  (*Id.*).  The EEOC counters that Dusek was an employee of Defendants "until just moments before her interview with the EEOC," Dusek was permitted to answer as Defendants' agent,[3] and the interview notes are a record of the regularly conducted business activities of the EEOC.  (ECF No. 169 at 7).

"District courts are given broad discretion in rulings on the admissibility of evidence."  *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 277 (5th Cir. 1991).

---

[3] Although it appears the EEOC is arguing Exhibit 14 is admissible as a statement that is not hearsay—"opposing party's statement"—under Federal Rule of Evidence 801(d)(2)(D), the EEOC has not sufficiently pleaded Dusek was acting as an agent on behalf of Advantage.  (*See* ECF No. 169 at 7).  Rather, the EEOC concedes Dusek was just fired by Advantage before her interview with the EEOC investigators.  (*Id.*).  Without more, the Court is not persuaded that Dusek was an authorized agent under Federal Rule of Evidence 801(d)(2)(D).

Hearsay is an out-of-court statement that a party offers in evidence to prove the truth of the matter asserted in the statement.  *See* FED. R. EVID. 801(c). Hearsay is generally inadmissible under Rule 802.  *See* FED. R. EVID. 802. However, records of regularly conducted activity are an exception to the rule against hearsay and are not excluded.  *Wilander v. McDermott Int'l, Inc.*, 887 F.2d 88, 91 (5th Cir. 1989), *aff'd*, 498 U.S. 337 (1991) (citing FED. R. EVID. 803(6)).  Records of regularly conducted activity includes:

> A record of an act, event, condition, opinion, or diagnosis if:
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

FED. R. EVID. 803(6).

Here, Exhibit 14 qualifies as hearsay, as the EEOC seeks to introduce the notes of Dusek's interview for the truth of the matter asserted—that Defendants had interrelated operations. (*See* ECF No. 154 at 12).  Specifically, the notes of Dusek's interview are asserted to show Dusek could not hire employees without approval at the executive level.  (*Id.*).  The EEOC argues

10

the notes of Dusek's interview are admissible under Federal Rule of Evidence 803(6) regarding records of regularly conducted activity.  (ECF No. 169 at 7).

However, the EEOC offers no hearsay exception applicable to Dusek's statements in the EEOC's notes under Federal Rule of Evidence 805, which provides "hearsay within hearsay should be excluded unless 'each part of the combined statements conforms with an exception to the rule.'" *Guerrero v. Mambo Seafood #1, Inc.*, No. 19-cv-3059, 2020 WL 10787426, at *3 (S.D. Tex. Oct. 19, 2020) (quoting FED. R. EVID. 805).  "Double hearsay in the context of a business record exists when the record is prepared by an employee with information supplied by another person." *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991).  As such, there is double hearsay here.

In *Guerrero*, the court sustained defendants' objection that the EEOC notes were inadmissible hearsay under Federal Rule of Evidence 805 because plaintiff offered "no hearsay exception that would apply to the employees' statements reflected in the EEOC notes." *Id.*; *see Wilson*, 939 F.2d at 271 ("[I]f the source of the information is an outsider, as in the facts before us, Rule 803(6) does not, by itself, permit the admission of the business record. The outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have."); *Cruz v.*

11

*Aramark Servs., Inc.*, 213 F. App'x 329, 332 (5th Cir. 2007) ("The business records hearsay exception applies to the EEOC's report and determination, but it does not apply to the underlying material collected during the EEOC investigation."); *Juneau v. Quality Christmas Tree, Ltd.*, No. 13-cv-2535, 2014 WL 3796406, at *3 (S.D. Tex. July 30, 2014) ("[W]hile EEOC findings and reports are generally admissible evidence, documents in the EEOC file are not admissible absent an independent hearsay exception.").

As such, the Court sustains this objection and does not consider Dusek's hearsay statements in the EEOC's notes.

### 2.    Villalobos' Affidavit

Defendants object to the EEOC's Exhibit 31, Villalobos' affidavit (ECF No. 154-32), because it was not signed under penalty of perjury.  (ECF No. 161 at 18).  The EEOC counters that the affidavit is sworn and notarized and does not need to contain a penalty of perjury statement.  (ECF No. 169 at 7).

"A signed statement that is notarized but does not state it is 'true and correct' or 'under penalty of perjury' does not qualify as a 'sworn statement' under Fifth Circuit law. *Dunn v. Hunting Energy Servs.*, 288 F. Supp. 3d 749, 760 (S.D. Tex. 2017) (citing *Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) ("Kline never declared her statement to be true and

correct; therefore, her affidavit must be disregarded as summary judgment proof.")).

Here, Villalobos' affidavit qualifies as a sworn statement because it is signed, notarized, and contains a statement that "[a]ll of the factual allegations in this affidavit are within my personal knowledge, and all of them are *true and correct*." (ECF No. 154-32 at 2–3 (emphasis added)); *see Dunn*, 288 F. Supp. 3d at 761 ("[W]hile the affidavit does not state 'penalty of perjury,' the court finds that the fact that it is notarized and the affiant declares it is 'true and correct' is enough to subject her to the penalties of perjury."). As such, the Court overrules this objection.

### 3.    The EEOC's Exhibit 36

Defendants object to pages 19–28, 30–31 of the EEOC's Exhibit 36, the "Bullhorn document printouts" that "summarizes communications" (ECF No. 154-37), claiming it contains multiple hearsay and is not properly authenticated. (ECF No. 161 at 18–19). The EEOC counters that under Federal Rule of Civil Procedure 31, "those records are: (1) self-authenticating business records; and (2) the statements by Dusek, its Regional Manager at the time, about wanting to fire Johnson on March 22, 2012, [which] are admissible as statements against interest." (ECF No. 169 at 7).

Addressing the EEOC's response to Defendants' hearsay objection, statements against interest "are not excluded by the rule against hearsay if the declarant is unavailable as a witness." FED. R. EVID. 804(b)(3). Here, the EEOC has not shown that Dusek is unavailable as a witness; thus, Federal Rule of Evidence 804(b)(3) cannot be invoked. The EEOC offers no viable hearsay exception(s) or exclusion(s) that would apply to these certain portions of Exhibit 36. As such, the Court sustains this objection on this basis.

Next, the EEOC argues Exhibit 36 contains self-authenticating business records. (ECF No. 169 at 7). "The Federal Rules of Evidence ban hearsay—out-of-court statements made to prove the truth of what's asserted." *United States v. Ayelotan*, 917 F.3d 394, 402 (5th Cir. 2019), *as revised* (Mar. 4, 2019). "The Federal Rules of Evidence except business records from hearsay." *Id.* (citing FED. R. EVID. 803(6)). "To qualify, a records custodian with knowledge must testify unless they're 'self-authenticating.'" *Id.* (citing FED. R. EVID. 803(6); FED. R. EVID. 902(11)). "Records are self-authenticating if they include a custodian certification that the records 'meet[ ] the requirements of Rule 803(6)(A)–(C).'" *Id.* (citing FED. R. EVID. 902(11)).

Here, the communications within Exhibit 36 are being offered for the truth of the matter asserted—that Dusek said the candidate search was super confidential and Dusek identified Johnson as a suitable candidate. (ECF No.

14

154 at 14).   However, the contested evidence in Exhibit 36 involves double hearsay.  (ECF No. 154-37).  For instance, "[d]ouble hearsay exists when a business record is prepared by one employee from information supplied by another employee." *United States v. Ismoila*, 100 F.3d 380, 392 (5th Cir. 1996) (quoting *United States v. Baker*, 693 F.2d 183, 188 (D.C. Cir. 1982) (quotations omitted)).   "'If both the source and the recorder of the information, as well as every other participant in the chain producing the record, are acting in the regular course of business, the multiple hearsay is excused by Rule 803(6).'" *Id.* (quoting *Baker*, 693 F.2d at 188).  "'However, if the source of the information is an outsider, Rule 803(6) does not, by itself, permit the admission of the business record.'"  *Id.* (quoting *Baker*, 693 F.2d at 188).  "The outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have." *Id.* (quoting *Baker*, 693 F.2d at 188).

Here, as to the first level of hearsay, EEOC provides a custodian certification, satisfying Federal Rule of Evidence 803(6)(A)–(C) because custodian, Michalene Dearen, swore under oath that: (1) the documents were made at or near the time of the act, event, or matter identified in the records; (2) the documents were made in the regular course of the business; and (3) the documents were transmitted to her files and she maintained the records as a

part of her official duties as the custodian of records. (ECF No. 154-37 at 14–18); see *Ayelotan*, 917 F.3d at 402 ("The certificates stated that Google or Yahoo! recorded the transmittal data automatically when users send emails, as part of the regular practice of a regularly conducted business activity. This satisfies Rule 803(6)'s requirements for admission.").

However, the content in the bullhorn printouts is not complete, as some of the data was lost and communications were summarized. (ECF No. 161 at 18–19). "The overarching theory for the [Federal Rule of Evidence] 803 exceptions is that, under certain circumstances, a statement, although it is hearsay, may still possess circumstantial guarantees of trustworthiness sufficient to justify its admission as evidence." *Rock*, 922 F.2d at 280. Because the bullhorn printouts include incomplete sentences, summarized communications, and omits lost data, the Court finds the contested bullhorn printouts do not provide the circumstantial guarantees of trustworthiness. *See id.* ("The district court committed no abuse of discretion in determining that the accident reports and logs did not provide the 'circumstantial guarantees of trustworthiness' contemplated by this rule.").

Even so, the second level of hearsay involves Dusek–an outsider to the company that generated the bullhorn printouts–who was the source of the information contained in the records. (ECF No. 154-37). So, although Federal

16

Rule of Evidence 803(6) provides an exception for one level of hearsay—that of the bullhorn printout themselves created by Action Executive or employees at Action Executive who recorded the email statements—the sources of the information contained in the records involve conversations and emails with Dusek, and Dusek's statements must fall within another hearsay exception to be admissible. *See Ismoila*, 100 F.3d at 392. As previously discussed, the EEOC argues Dusek's statements are admissible as statements against interest; however, that exclusion from hearsay is not applicable.

Thus, the Court sustains Defendants' objection at to Exhibit 36.

### B.    The EEOC's Objections to Summary Judgment Evidence

The EEOC objects to Defendants' Exhibit 2, Sherry Fischer's declaration (ECF No. 159-2), arguing it is unsworn and consists of misleading information, factual errors, and hearsay. (ECF No. 169 at 6). The EEOC also objects to the chart Ryan's Pointe uses in its Motion for Summary Judgment (ECF No. 144 at 3) claiming that record evidence citations relied on by Ryan's Pointe do not support the information in the chart. (ECF No. 156 at 2). Defendants do not respond to these objections.

17

### 1.    Sherry Fischer's Declaration

The EEOC first objects to Sherry Fischer's ("Fischer") declaration arguing it is unsworn, speculative, and not based on personal knowledge.  (ECF No. 169 at 1–2).

"It is a settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment." *Nissho–Iwai Am. Corp.*, 845 F.2d at 1306.  "A statutory exception to this rule exists under 28 U.S.C. § 1746, which permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct.'" *Id.*  "Under Section 1746, the United States Court of Appeals for the Fifth Circuit has held that [d]eclarations . . . that are dated and made on penalty of perjury . . . constitute [ ]adequate summary judgment evidence." *MetroPCS v. Thomas*, 327 F.R.D. 600, 617 (N.D. Tex. 2018) (quoting *Grogan v. Kumar*, 873 F.3d 273, 279 (5th Cir. 2017) (quotations omitted)).

Here, Fischer's declaration, although unsworn, contains the statement that it was made "under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing declaration is true and correct to the best of my knowledge." (ECF No. 159-2 at 7).  The EEOC argues the use of the statement "to the best of my knowledge" is "speculative language" and renders the declaration

incompetent evidence. (ECF No. 169 at 1–2). The Court disagrees. "[I]n the context of summary judgment motions, courts in this circuit have found an unsworn declaration to substantially comply with Section 1746 by including the statement that 'I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.'" *MetroPCS*, 327 F.R.D. at 619 (collecting cases). As such, the Court does not find the declaration inadmissible on the grounds that it is unsworn or speculative. *See id.* (holding "'declar[ing] under penalty of perjury that the foregoing is true and correct to the best of my knowledge' meets Section 1746's requirements").

Next, the EEOC argues the portions of the declaration that relate to events in 2011 and 2012 should be stricken because Fischer lacks personal knowledge as she did not work for any Hayman entity until June 10, 2013. (ECF No. 169 at 2 (citing ECF No. 161-14 at ¶¶ 3, 6, 7, 13, 15, 16, 17, 18, 20, 25, 26, 27, 28, 29, 32, 35)).

Rule 56(e) provides "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." "[A]n affidavit can adequately support a motion for summary judgment as [Rule] 56(c)(4) requires when the affiant's personal knowledge is based on a review of her employer's business records and the affiant's position

with the employer renders her competent to testify on the particular issue which the affidavit concerns." *MetroPCS*, 327 F.R.D. at 619. "'Personal knowledge may be demonstrated by showing that the facts stated "reasonably" fall within the "sphere of responsibility" of the affiant as a corporate employee.'" *Helia Tec Res., Inc. v. GE & F Co.*, No. 09-cv-1482, 2013 WL 3157534, at *2 (S.D. Tex. June 19, 2013) (quoting *Cutting Underwater Technologies USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012)). "Furthermore, personal knowledge does not have to be contemporaneous knowledge." *Id.* (citing *Dalton v. FDIC*, 987 F.2d 1216, 1223 (5th Cir. 1002)).

Here, Fischer's declaration is based on personal knowledge due to her position as Chief Financial Officer for "all the Hayman related entities" and because she bases her declaration on a review of her employer's business records. (ECF No. 161-14 at 2); *see Monroe Firefighters Ass'n v. City of Monroe*, No. 06-cv-1092, 2009 WL 916272, at *3–4 (W.D. La. Mar. 31, 2009) (holding Fire Chief Bryant had personal knowledge to testify about half-time payments to firefighters, including half-time payments made before his employment with the department, due to his position as Fire Chief and because he had complete access to the records of the department). As such, the Court finds Fischer has personal knowledge.

The EEOC also objects to Fischer's declaration, arguing it consists of misleading information, factual errors, and hearsay. (ECF No. 169 at 6). The EEOC argues the "factual errors" in Fischer's declaration relate to the number of workers employed by Defendants. (*Id.*). However, a factual dispute as to the total number of employees that worked for Defendants has been raised in the EEOC's Motion for Sanctions for Spoliation of Payroll Records and Personnel Files, as discussed below. (ECF No. 146 at 13). Further, the EEOC points to two statements made by Fischer that it considers misleading or a misrepresentation: (1) Treiman was not an employee of Advantage and (2) Ryan's Pointe never had any employees. (ECF No. 169 at 6). However, these alleged contradictions to the record or misrepresentations are not for the Court to weigh and determine at this point in litigation. *See BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, No. 4:15-cv-00627, 2017 WL 3634215, at *5 (S.D. Tex. Aug. 24, 2017) ("Because it is not the court's duty to weigh credibility on a motion for summary judgment, . . . BHL's objections to Tice's Declaration on the ground that he is an interested witness and his testimony is contradicted by the record are overruled.").

Moreover, the EEOC argues there is hearsay within Fischer's declaration but does not specify which statement constitutes hearsay. *Forbus v. Andrews Distrib. Co. of N. Tex.*, No. 3:04-cv-0468, 2005 WL 3637041, at *3

21

(N.D. Tex. Nov. 1, 2005) ("Forbus makes general objections without specifying the portions of the affidavits she believes are objectionable. The Court is not required to comb through each affidavit and isolate what it believes Forbus is objecting to. . . . Therefore, the Court overrules the remainder of Forbus's objections."). As such, the EEOC's objection to Fischer's declaration is overruled.

## 2.    Ryan's Pointe's Chart

Additionally, the EEOC makes an objection to the chart Ryan's Pointe uses in its Motion for Summary Judgment (ECF No. 144 at 3) on the basis that record evidence citations relied on by Ryan's Pointe do not support the information in the chart. (ECF No. 156 at 2). However, the EEOC does not point to the record evidence it contends is unsupportive. Even so, the chart that Ryan's Pointe utilizes is in a background section that includes numerous citations. (ECF No. 144 at 2–5). The Court is unsure what evidence the EEOC finds unsupportive regarding the many citations to record evidence relied upon by Ryan's Pointe. As such, the Court overrules this objection. *See Ogbonna v. USPLabs, LLC*, No. 13-cv-347, 2014 WL 12489695, at *4 (W.D. Tex. Aug. 15, 2014) ("Defendant USPLabs's general objections are not applied with sufficient specificity to enable this Court to evaluate their merits. Accordingly, the Court overrules all of Defendant USPLabs's general objections, that are not

referenced in response to specific discovery requests in their entirety."); *see also Deutsche Bank Nat'l Tr. Co. as Tr. of Aames Mortg. Inv. Tr. 2005-1 v. Mortberg*, No. 4:19-cv-00875, 2020 WL 7658065, at *7 (E.D. Tex. Nov. 16, 2020), *report and recommendation adopted*, No. 4:19-cv-875, 2021 WL 716750 (E.D. Tex. Feb. 24, 2021) ("A loosely formulated and imprecise objection will not preserve error. Rather, a trial court judge must be fully apprised of the grounds of an objection." (quotations omitted)).

### C.    The EEOC's Motion for Partial Summary Judgment

The EEOC moves for partial summary judgment on two grounds: (1) Defendants operated an integrated enterprise; and (2) Defendants inadequately pleaded their affirmative defenses.   (ECF No. 154 at 20). Additionally, the EEOC argues the Court is bound by the Fifth Circuit findings on the EEOC's prima facie claims of national origin and sex discrimination and Defendants are barred from disputing such conclusions as a matter of law.  (*Id.* at 20, 25–31).  Defendants argue it is inappropriate to apply the integrated enterprise doctrine and their affirmative defenses should survive.  (ECF No. 161 at 6–18).

### 1.    Integrated Enterprise

The EEOC argues the Court should grant summary judgment on Ryan's Pointe's fifth and sixth affirmative defenses: "Defendant is not an 'employer'

23

as defined by 42 U.S.C. § 2000e(b)" and "Plaintiff's claims are barred, in whole or in part, in that Plaintiff names the wrong corporate defendant or misstates the corporate relationship of the entities;" and Advantage's fifth affirmative defense: Plaintiff's claims are barred, in whole or in part, in that Plaintiff names the wrong corporate defendant or misstates the corporate relationship of the entities." (ECF No. 154 at 20; ECF No. 6 at 1–2; ECF No. 133 at 2). The EEOC contends these defenses have no merit because "Defendants operated as an integrated enterprise, and thus were a single employer that is liable to Villalobos." (ECF No. 154 at 20). Defendants argue Advantage was the only employer of Villalobos. (ECF No. 161 at 6).

"The term 'employer' as used in Title VII of the Civil Rights Act was meant to be liberally construed." *Trevino v. Celanese Corp.*, 701 F.2d 397, 403 (5th Cir. 1983). To determine whether separate business entities are sufficiently interrelated to qualify as a single employer under the integrated enterprise theory, courts consider the "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* at 404. "Courts applying this four-part standard in Title VII and related cases have focused on the second factor: centralized control of labor relations." *Id.* "This criterion has been further refined to the point that '[t]he critical question to be answered then is: What

entity made the final decisions regarding employment matters related to the person claiming discrimination?'" *Id.* (citing *Odriozola v. Superior Cosm. Distribs., Inc.*, 531 F. Supp. 1070, 1076 (D.P.R. 1982)).

Unlike *Trevino*, the Parties are not asserting conflicting testimony or evidence with respect to the interrelation of Defendants. 701 F.2d at 404. The EEOC provides a breakdown of each factor and supporting evidence weighing in favor of deeming Defendants as a single employer under the integrated enterprise theory. (*See* ECF No. 154 at 21–25). For instance, the EEOC offers:

- Dusek's testimony stating she did not have authority to make hiring decisions and all hiring of managers must be approved by Ryan's Pointe owners, Hayman and Treiman. (*Id.* at 22).

- The "2012 Operations Manual drafted by Advantage refers to the Hayman Advisors' office in California as its Advantage's 'corporate office,' and it specifically notes the California office is where Advantage's 'personnel division' is located." (*Id.* at 23).

- "[T]he 2013 Employee Handbook for Hayman Advisors and Advantage specifically indicates that it applies to all affiliated property employees, including Ryan's Pointe." (*Id.*).

25

- The "California staff as well as Dusek, Blum, and the other managers of subsidiary companies, would attend monthly meeting hosted by Hayman to discuss operational matters." (*Id.* at 24).

- Villalobos' paychecks show they were issued by Ryan's Pointe and, although Villalobos was technically paid by Advantage, Ryan's Pointe would reimburse Advantage for the payments. (*Id.*).

- "Ryan's Pointe used Advantage's Employer Identification Number to report wages of its workers, including Villalobos." (*Id.*).

- Testimony where "Treiman and Hayman further acknowledged that the Hayman family of entities 'work hand-in-hand, sharing common administrative and business services.'" (*Id.* at 25).

- "Hayman held a controlling interest and served as CEO in all the entities." (*Id.*).

- "As for common financial control, the evidence shows Hayman financed all shared services between the various entities by fund allocation rather than by individual contracts for the provision of serves [sic]." (*Id.*).

In response, Defendants do not attempt to refute this evidence or provide contrary evidence. (*See* ECF No. 161). Rather, Defendants start by restating the structure and relationship between the entities and owners. (*Id.* at 6–9).

However, the only argument Defendants make is short and without supporting

authority:

> Admittedly, the two companies had some common ownership, but not identical ownership. Ryan's Pointe was not a parent or subsidiary of Advantage and Advantage was not a parent of [sic] subsidiary of Ryan's Pointe. Both companies have separate and distinct purposes. Ryan's Pointe Ryan's Pointe [sic] was a single asset, special purpose holding company with no employees, and Advantage was a management company for multi[-]family residential property. While Ryan's Pointe engaged Advantage to manage its property, such an engagement cannot and should not expose it to liability for the way in which Advantage managed its employees.

(*Id.* at 9). Defendants seem to emphasize the fact that Ryan's Pointe and

Advantage are separate entities. (*Id.*). While the Court acknowledges that

Ryan's Pointe and Advantage are separate entities, the factor test is used to

determine whether *separate* business entities are sufficiently interrelated. *See*

*Trevino*, 701 F.2d at 403 ("Over the past decade, numerous courts have drawn

upon theories and rules developed in the related area of labor relations in

determining when separate business entities are sufficiently interrelated for

an employee whose Title VII rights have been violated to file a charge against

both entities."). The EEOC has provided sufficient facts to establish

Defendants operated as an integrated enterprise and Defendants fail to

establish that, as a matter of law, they did not operate as an integrated

enterprise.  *See Equal Emp. Opportunity Comm'n v. Mod. Grp., Ltd.*, No. 1:21-cv-451, 2024 WL 1288634, at *4–7 (E.D. Tex. Mar. 25, 2024).

Thus, the Court recommends granting summary judgment with respect to Ryan's Pointe's fifth and sixth affirmative defenses and Advantage's fifth affirmative defense.  (ECF No. 6 at 1–2; ECF No. 133 at 2).

## 2.    Defendants' Defenses

The EEOC argues Defendants cannot show its "claims are barred by any applicable statute of limitations or under waiver, estoppel, the doctrine of unclean hands, or laches."  (ECF No. 154 at 25).  The EEOC argues Defendants cannot establish failure to exhaust administrative remedies and failure to fulfill conditions precedent.  (*Id.* at 27).  Further, the EEOC argues Defendants did not establish that it failed to state a claim, failed to establish the defense of fraud, and failed to mitigate.  (*Id.* at 29–31).

As a threshold matter, the Court notes that Defendants pleaded their defenses without factual support or specificity, with the exception of their fraud and failure to fulfill conditions precedent defenses.  (ECF No. 6 at 1–2; ECF No. 133 at 1–2).  "[T]o adequately plead an affirmative defense, there must be enough factual particularity to give the plaintiff 'fair notice of the nature of the affirmative defense and prevent unfair surprise.'"  *Equal Emp. Opportunity Comm'n v. S&B Indus., Inc.*, No. 3:15-cv-0641, 2016 WL 7178969,

at *10 (N.D. Tex. Dec. 8, 2016) (quoting *Mary Kay, Inc. v. Dunlap*, 2012 WL 2358082, at *8 (N.D. Tex. June 21, 2012)).  "Although . . . in some instances merely pleading the name of the affirmative defense may be sufficient, a 'fact-specific inquiry' is required to determine whether the pleadings set forth the 'minimum particulars' needed to ensure the plaintiff is not the victim of unfair surprise."  *Id.* (quoting *Mary Kay, Inc.*, 2012 WL 2358082, at *8).  Because the Court is reviewing the pleadings at the summary judgment stage, the Court will examine whether the EEOC satisfies its initial burden and whether Defendants produce evidence of a genuine factual dispute in their responsive pleadings regarding the defenses at issue.  *See Coastal Agric. Supply, Inc.*, 759 F.3d at 505; *see also Mod. Grp., Ltd.*, 2024 WL 1288634, at *24 ("[T]he EEOC had ample opportunity to respond to Defendants' direct threat arguments not only in its reply brief, but also in its response and sur-reply. Although the EEOC complained that it could not determine from Defendants' answer what 'steps' Defendants alleged that they took to complete the 'individualized assessment' required to determine that Dare was a direct threat, the EEOC was supplied with this information in Defendants' reply brief, and the EEOC explicitly addressed and challenged these allegations in its sur-reply.").

Each contested defense is addressed in turn.

29

### a.     Statute of Limitations

The EEOC argues it is not subject to the statute of limitations and that "there is no factual dispute about the timeliness of the EEOC charge or the filing of this lawsuit." (ECF No. 154 at 25–26). Defendants respond, arguing the "failure to timely bring an administrative claim is a bar against Villalobos, and the [EEOC]'s failure to act until more than two years after the Charge was filed against Ryan's Pointe is sufficient evidence on the face of the record to support the defense[] of . . . limitations." (ECF No. 161 at 17).

"Under Title VII of the Civil Rights Act of 1964, a plaintiff 'shall' file an employment discrimination charge with the [EEOC] either 180 or 300 days after an 'alleged unlawful employment practice occurred.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 101 (2002) (quoting 42 U.S.C. § 2000e–5(e)(1)). "[N]either § 706(f) nor any other section of the Act explicitly requires the EEOC to conclude its conciliation efforts and bring an enforcement suit within any maximum period of time." *Occidental Life Ins. Co. of Cal. v. E.E.O.C.*, 432 U.S. 355, 360 (1977). "[N]either the federal statute nor state law provides a statute of limitations for these types of lawsuits"—Title VII cases for unlawful employment practices. *E.E.O.C. v. La. Power & Light Co.*, No. 88-cv-1147, 1989 WL 35915, at *1 (E.D. La. Apr. 10, 1989).

Here, Villalobos filed the Charge on September 12, 2012, and her termination occurred on March 21, 2012.  (ECF No. 3 at ¶ 16; ECF No. 146-3 at 2).  As such, Villalobos filed her Charge within the 180-day timeline, which expired September 17, 2012.  *See Urrutia v. Valero Energy Corp.*, 841 F.2d 123, 124 (5th Cir. 1988) ("A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." (quoting 42 U.S.C. § 2000e–5(e)).  However, Defendants merely assert the failure to timely bring an administrative claim is a bar against Villalobos, without citing to supporting authority.  (*See* ECF No. 161).  Even so, as the case law provides, there is no statute of limitations on Title VII cases from the time between the Charge being filed and the EEOC filing suit in this Court.  *See E.E.O.C.*, 1989 WL 35915, at *1.

Defendants also argue the EEOC is barred by the statute of limitations because "an administrative claim was never filed against Advantage."  (ECF No. 161 at 3).  "We recognize a general rule that 'a party not named in an EEOC charge may not be sued under Title VII.'"  *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014), *as revised* (Sept. 18, 2014) (quoting *Way v. Mueller Brass Co.*, 840 F.2d 303, 307 (5th Cir. 1988)).  "When applying that general rule, however, courts liberally construe Title VII's naming requirement so as to not frustrate claimants with needless procedural roadblocks."  *Id.*  One

exception to the general rule provides, if an "'unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance,' the purpose of the named-party requirement has been accomplished, and 'the charge is sufficient to confer jurisdiction over that party.'" *Id.* at 483 (quoting *Eggleston v. Chi. Journeymen Plumbers' Loc. Union No. 130, U. A.*, 657 F.2d 890, 905 (7th Cir. 1981)).

As the EEOC notes, "[b]oth the charge and Notice . . . were served on Defendants and identified the Respondent as Ryan's Pointe Houston, LLC d/b/a Advantage Property Management." (ECF No. 169 at 5 (citing ECF Nos. 146-3, 146-4)). The Charge and Notice of Charge both list Advantage within the contents of the documents, providing Advantage with adequate notice of the Charge. *See Culumber v. Morris Network of Miss., Inc.*, No. 1:23-cv-219, 2024 WL 3513496, at *5 (S.D. Miss. July 23, 2024) ("Turning to the actual notice exception, Plaintiff has sufficiently pled that Morris Network and Morris Multimedia were placed on actual notice by her EEOC Charges . . . because she alleges that Morris Multimedia and Morris Network's officers and employees were listed as contacts on the EEOC Charges."). As such, the Court recommends granting the EEOC's Motion for Partial Summary Judgment with respect to Defendants' statute of limitations defense.

32

### b.    Waiver, Estoppel, and Unclean Hands

The EEOC argues it is entitled to summary judgment on Defendants' defenses of waiver, estoppel, and unclean hands. (ECF No. 154 at 25). To support its argument, the EEOC claims Defendants did not adequately plead these defenses and have not alleged any conduct that would allow these defenses to proceed. (*Id.* at 27). Defendants seem to support their defenses of waiver, estoppel, and unclean hands by asserting "Villalobos committed several material misrepresentations." (ECF No. 161 at 9). Defendants claim Villalobos made misrepresentations to get hired as a manager, made misrepresentations by stating she was an assistant manager for C&C Management,[4] and "Villalobos falsely stated in an affidavit her counsel prepared and provided to the EEOC that she was out of town the entire week of March 12-16, 2012" for vacation. (*Id.* at 9–17).

First, Defendants oppose the EEOC's request for summary judgment on their waiver defense, arguing it is supported by Villalobos' several material misrepresentations and the failure of an administrative claim to be filed against Advantage. (ECF No. 161 at 17). As previously addressed, Advantage had actual notice of the claim. The question remains whether "several material misrepresentations" supports a defense of waiver.

---

[4] "C&C Management" or sometimes referred to as "CNC Management" was Villalobos' employer before Ryan's Pointe brought the Property and Advantage managed the Property.

"A waiver is an intentional release of a known right or intentional conduct inconsistent with claiming it." *Broad. Satellite Int'l, Inc. v. Nat'l Digit. Television Ctr., Inc.*, 323 F.3d 339, 345 (5th Cir. 2003) (citing *Mass. Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 401 (Tex. 1967)). "The following elements must be met to find waiver: 1) a right must exist at the time of the waiver; 2) the party who is accused of waiver must have constructive or actual knowledge of the right in question; and 3) the party intended to relinquish its right." *Id.* Defendants do not state which right was allegedly waived. Rather, Defendants simply claim "such bad acts further establish Defendants['] affirmative defenses of waiver, estoppel, and unclean hands." (ECF No. 161 at 17). It is unclear how bad acts or material misrepresentations shows waiver of a right and Defendants provide no authority to support this assertion. As such, the Court recommends granting the EEOC's Motion for Partial Summary Judgment with respect to Defendants' waiver defense. *See Equal Emp. Opportunity Comm'n v. Mod. Grp., Ltd.*, 725 F. Supp. 3d 577, 594 (E.D. Tex. 2024) ("Once a proper motion has been made, the nonmoving parties may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to demonstrate the existence of a genuine issue for trial."); *see also Tesoros Trading Co. v. Tesoros Misticos, Inc.*, 10 F. Supp. 3d 701, 720 (N.D. Tex. 2014) (holding defendant

failed to establish that a genuine dispute of material fact existed as to its affirmative defenses because defendant only asserted two pieces of evidence that did not support each element of its defenses).

Next, Defendants oppose the EEOC's request for summary judgment on their estoppel defense, arguing Villalobos' several misrepresentations or "bad acts" establish their affirmative defense of estoppel. (*Id.*). "[E]stoppel exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's act were repudiated." *F.D.I.C. v. Niblo*, 821 F. Supp. 441, 452 (N.D. Tex. 1993). To prove estoppel, a party must show:

> 1) the party to be estopped made a definite misrepresentation to the party asserting estoppel; 2) the party to be estopped was aware of the facts; 3) the party to be estopped intended the party asserting estoppel to act on its misrepresentation or had reason to believe the party asserting estoppel would act on its misrepresentation; 4) the party asserting estoppel neither had knowledge nor reason to know of the facts; and 5) the party asserting the estoppel reasonably relied on the misrepresentation to its detriment.

*Id.* Although Defendants explain Villalobos' alleged misrepresentation in depth, they fail to allege that they reasonably relied on the misrepresentation to their detriment. Rather, Defendants claim "[t]he EEOC unjustifiably believed [Villalobos'] misrepresentation [and a] good faith investigation by the EEOC would have revealed that Villalobos was not qualified to be property

manager and that Villalobos was not credible as a complainant because she lied to the EEOC investigator." (ECF No. 161 at 15). It is the *party asserting the estoppel* that need to reasonably rely on the misrepresentation. *See Niblo*, 821 F. Supp. at 452 (emphasis added). Because Defendants have not provided evidence of a misrepresentation that Defendants themselves, not the EEOC, relied upon to their detriment, the Court recommends granting the EEOC's Motion for Partial Summary Judgment with respect to Defendants' estoppel defense. *See VT, Inc. v. GEICO Ins. Co.*, No. 3:03-cv-0522, 2004 WL 1373132, at *8 (N.D. Tex. June 16, 2004), *modified in part sub nom. VT, Inc. v. Geico Gen. Ins. Co.*, No. 3:03-cv-0522, 2004 WL 2389450 (N.D. Tex. Oct. 22, 2004) ("Because GEICO has not provided any evidence of a misrepresentation that GEICO relied on to its detriment, VT's motion for summary judgment on GEICO's estoppel defense is hereby GRANTED.").

Additionally, the EEOC moves for summary judgment on Defendants' unclean hands defense because "it does not provide enough specificity to put the Court or the EEOC on notice of the actions to which these defenses refer." (ECF No. 154 at 27). Defendants oppose the EEOC's request for summary judgment on their unclean hands defense, arguing Villalobos' several misrepresentations or "bad acts" establish their affirmative defense of unclean hands. (ECF No. 161 at 17). Further, the EEOC argues "Defendant proffered

no law or evidence to rebut the EEOC's proof that it is not subject to . . . unclean hands.    Defendants feebly attempt to assert Villalobos engaged in misrepresentation/unclean hands/fraud by describing representations made to them by Rowghani, not Villalobos . . ."  (ECF No. 169 at 5).

"The equitable defense of unclean hands applies when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." *Hub Tex., LLC v. Arch Specialty Ins. Co.*, No. 5:21-cv-180, 2023 WL 11859828, at *8 (N.D. Tex. Mar. 21, 2023) (quoting *Ellipse Commc'ns, Inc. v. Caven*, No. 3:07-cv-1922, 2009 WL 3398709, at *8 (N.D. Tex. Oct. 16, 2009) (quotations omitted)).  "The doctrine encompasses conduct that has been unconscientious, unjust, marked by a want of good faith or violates the principles of equity and righteous dealing." *Id.* (quoting *Buxbaum Holdings, Inc. v. Haggar Clothing Co.*, No. 3:12-cv-2167, 2014 WL 12577071, at *6 (N.D. Tex. Jan. 7, 2014); *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (quotations omitted)).  "To succeed on such a defense, the party invoking the doctrine must demonstrate 'serious injury to himself arising from the conduct that cannot be corrected without applying the doctrine.'" *Id.* (quoting *Buxbaum Holdings, Inc.*, 2014 WL 12577071, at *6).  To emphasize, in order "[t]o invoke the doctrine, a defendant must show that he was injured by the plaintiff's improper acts." *Alcatel USA,*

37

*Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 796 (5th Cir. 1999). "And '[w]here the harm done to the defendant is not serious and can be otherwise corrected, the unclean hands maxim should not be applied.'" *Id.* at 796–97 (quoting *1st Coppell Bank v. Smith*, 742 S.W.2d 454, 464 (Tex. App.—Dallas 1987, no writ)).

Here, Defendants have not shown they were seriously injured by Villalobos' alleged misrepresentations. Because Defendants fail to show that they were seriously injured by the alleged misrepresentations, Defendants cannot properly invoke the defense of unclean hands. As such, the Court recommends granting the EEOC's Motion for Partial Summary Judgment with respect to Defendants' unclean hands defense.

### c.    Laches

The EEOC argues a laches defense cannot be asserted against it because laches may not be applied against the sovereign and that the EEOC acts in the public interest to enforce federal law. (ECF No. 154 at 26). First, Defendants respond to the EEOC's laches argument by stating,

> The failure to timely bring an administrative claim is a bar against Villalobos, and the Plaintiff's failure to act until more than two years after the Charge was filed against Ryan's Pointe is sufficient evidence on the face of the record to support the defenses of waiver, limitations, laches, and failure to exhaust administrative remedies.

38

(ECF No. 161 at 17). However, as the Court previously discussed, Defendants have not introduced any evidence or cited any authority that supports their notion that the EEOC did not timely file suit against Defendants. (*See id.*).

Second, Defendants respond to the EEOC's laches argument stating, "Villalobos committed several material misrepresentations that when read together support the defenses of fraud, waiver, the doctrine of unclean hands and laches." (*Id.* at 20). However, "[t]o succeed on a defense of laches, a defendant must show '(1) a delay on the part of the plaintiff in instituting suit; (2) that is not excused; and (3) that results in undue prejudice to the defendant's ability to present an adequate defense.'" *E.E.O.C. v. Rock-Tenn Servs. Co.*, 901 F. Supp. 2d 810, 832 (N.D. Tex. 2012) (*quoting Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 708 (5th Cir. 1994)). It is unclear and Defendants do not expand upon how the alleged "material misrepresentations" support any of the elements of a laches defense, such as a delay in instituting the suit or undue prejudice to the Defendants ability to present an adequate defense. As such, the Court recommends granting the EEOC's Motion for Partial Summary Judgment with respect to Defendants' laches defense.

### d.    Failure to Exhaust Administrative Remedies

The EEOC argues Defendants cannot establish their failure to exhaust administrative remedies defense. (ECF No. 154 at 27). The EEOC's argument seems to be centered around the integrated enterprise doctrine and the notice provided to Advantage in Villalobos' Charge. (*See id.* at 28–29). However, the Court has previously addressed these issues herein. Even so, Defendants do not specify which administrative remedy the EEOC failed to exhaust in their Answers (ECF Nos. 6, 133) and Response to the EEOC's Motion for Partial Summary Judgment (ECF No. 161 at 17). As such, the Court recommends granting the EEOC's Motion for Partial Summary Judgment with respect to Defendants' failure to exhaust administrative remedies defense. *See Mod. Grp., Ltd.*, 725 F. Supp. 3d at 594 ("Once a proper motion has been made, the nonmoving parties may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to demonstrate the existence of a genuine issue for trial."); *see also Tesoros Trading Co.*, 10 F. Supp. 3d at 720 (holding defendant failed to establish that a genuine dispute of material fact existed as to its affirmative defenses because defendant only asserted two pieces of evidence that did not support each element of its defenses).

### e.    Failure to Fulfill Conditions Precedent and Failure to State a Claim

The EEOC argues Defendants cannot establish failure to fulfill conditions precedent and Defendants fail to establish the EEOC failed to state a claim.  (ECF No. 154 at 27–29).  Defendants do not respond to these arguments.  (*See* ECF No. 161).  Because Defendants do not respond to or address the EEOC's argument regarding their defenses of "failure to state a claim" and "failure to fulfill conditions precedent", such defenses have been abandoned or waived.  *See Roberts v. Overby-Seawell Co.*, No. 3:15-cv-1217, 2018 WL 1457306, at *11 (N.D. Tex. Mar. 23, 2018) ("As Defendants fail to address these affirmative defenses, much less respond to any of Robert's arguments in support of his motion for summary judgment on these affirmative defenses, the court concludes that Defendants have abandoned or waived these affirmative defenses.").  As such, the Court recommends granting the EEOC's Motion for Partial Summary Judgment with respect to Defendants' "failure to state a claim" and "failure to fulfill conditions precedent" defenses.

### f.    Fraud

The EEOC argues Defendants fail to establish their affirmative defense of fraud because they do not meet the particularity pleading requirement under Federal Rule of Civil Procedure 9(c) and the defense does not meet the

standard for after-acquired evidence. (ECF No. 154 at 30–31). Defendants

argue Villalobos committed several material misrepresentations, supporting

their fraud defense. (ECF No. 161 at 9).

> To establish a fraud claim, a plaintiff must prove:
>
> (1) the defendant made a material misrepresentation that was false; (2) the defendant knew it was false when made or made it recklessly as a positive assertion without any knowledge of its truth; (3) defendant intended the plaintiff to act upon the representation; and (4) plaintiff actually and justifiably relied on the misrepresentation and suffered injury.

*LeTourneau Techs. Drilling Sys., Inc. v. Nomac Drilling, LLC*, 676 F. Supp. 2d

534, 542 (S.D. Tex. 2009) (applying these elements of fraud to defendant's

counterclaim and defense of fraud).

Here, as previously discussed, Defendants fail to allege that they

actually and justifiably relied on the misrepresentation and suffered injury. In

Defendants' answers (ECF Nos. 6, 133) and their Response to the EEOC's

Motion for Partial Summary Judgment (ECF No. 161), Defendants never

allege they were injured by any alleged misrepresentation by Villalobos.

Rather, Defendants use the alleged misrepresentations as evidence that

"Villalobos was not qualified to be a property manager" and as evidence of her

alleged poor work performance. (*Id.* at 14). Because Defendants fail to show

that they relied upon and were injured by the alleged misrepresentations,

Defendants have not adequately pleaded a fraud defense. *See In re Yazoo*

*Pipeline Co., L.P.*, 459 B.R. 636, 650 (Bankr. S.D. Tex. 2011) ("The Trustee does not identify which of these misrepresentations the estate or the Trustee allegedly relied on, how they relied, and what injury resulted from the reliance. The general allegations under each element of fraud do not causally connect to each other. The Trustee therefore fails to state a claim for fraud."). As such, the Court recommends granting the EEOC's Motion for Partial Summary Judgment with respect to Defendants' fraud defense.

### g.   Failure to Mitigate

The EEOC argues Defendants fail to prove their failure to mitigate defense because the defense is conclusory and a boilerplate assertion devoid of factual support. (ECF No. 154 at 31). Defendants argue Villalobos failed to mitigate her damages because "through her own doing, [Villalobos] could not hold a job as an apartment manager, or virtually anything else over the years [and] was fired by atleast [sic] one employer, and she just quit other jobs." (ECF No. 161 at 18). Defendants rely upon Vasquez's expert report and a deposition of Villalobos. (*Id.*).

"Although the failure to mitigate damages is an affirmative defense, 'a plaintiff suing under Title VII has a duty to mitigate her damages by using reasonable diligence to obtain substantially equivalent employment.'" *Equal Emp. Opportunity Comm'n v. Stone Pony Pizza, Inc.*, 172 F. Supp. 3d 941, 958

43

(N.D. Miss. 2016) (quoting *Buckingham v. Booz Allen Hamilton, Inc.*, 64 F. Supp. 3d 981, 984 (S.D. Tex. 2014)). "'Substantially equivalent employment' is that 'employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the Title VII claimant has been discriminatorily terminated.'" *Buckingham*, 64 F. Supp. 3d at 984 (quoting *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990)). However, "the Fifth Circuit reaffirmed its position that a Title VII claimant's obligation to mitigate damages does not require him to accept a position noncomparable or inferior to his previous position." *Tratree v. BP Pipelines (N. Am.) Inc.*, No. 03-cv-954, 2009 WL 1457160, at *5 (S.D. Tex. May 22, 2009) (citing *Sellers*, 839 F.2d at 1137). "The employer in such a case has the burden of proving that a claimant has not exercised due diligence in seeking comparable employment after an unlawful discharge." *Id.* "To meet this burden, an employer must demonstrate that comparable work was available and that the claimant did not seek it out." *Id.* "If an employer proves that an employee has not made reasonable efforts to obtain work, the employer does not have to establish the availability of substantially comparable employment." *Id.*

Here, Defendants' failure to mitigate defense is supported by Vasquez's expert opinion and deposition testimony. (ECF No. 161 at 18; ECF No. 161-3

at 2–11; ECF No. 161-4 at 5–35). However, these exhibits do not establish that Villalobos did not use reasonable diligence to obtain substantially equivalent employment. Rather, Vasquez opines Villalobos is not qualified as a property manager and that she would likely not maintain continual employment as a property manager. (ECF No. 161-3 at 8–11). Further, the section of Villalobos' deposition testimony Defendants rely upon is where Defendants' counsel questions Villalobos about her employment subsequent to her termination with Defendants. (ECF No. 161-4 at 5–35). In the deposition, Villalobos testified about multiple jobs she obtained from 2014 to 2020, including jobs in apartment management, insurance, and real estate. (*See id.*). Defendants point to the fact that Villalobos testified she was fired from her management position at Claye Properties, Inc. in December 2014. (*Id.* at 9–10). However, Defendants do not cite to, and the Court has not located, case law that supports the notion that a plaintiff fired from employment equates to failure to mitigate damages. Rather, here the deposition testimony shows Villalobos was continuously employed and seeking employment after she was terminated by Defendants. (*See id.* at 5–35). Defendants fail to show Villalobos failed to mitigate her damages by not using reasonable diligence to obtain substantially equivalent employment. Nor have Defendants met their burden in demonstrating that comparable work was available and that Villalobos did not

seek it out.  As such, the Court recommends granting the EEOC's Motion for Partial Summary Judgment with respect to Defendants' failure to mitigate defense.

### D.    Villalobos' Motion for Partial Summary Judgment

Villalobos seeks partial summary judgment, arguing Defendants have inadequately pleaded the defenses of waiver, estoppel, laches, and unclean hands against her and there is no evidence sufficient to raise a material fact in support of their defenses.  (ECF No. 143 at 3).  Aside from this argument, Villalobos "incorporates by reference and hereby asserts all argument[s] and evidence asserted by the EEOC in its Motion for Partial Summary Judgment." (*Id.* at 1–2).

First, the Court addresses Villalobos' argument that is separate and not incorporated within the EEOC's Motion for Partial Summary Judgment: Defendants inadequately pleaded the defenses of waiver, estoppel, laches, and unclean hands against Villalobos.  (*Id.* at 3).  To support her argument, Villalobos asserts "[i]n Paragraph 3 of their respective Answers to Intervenor's Complaint in Intervention, each Defendant simply alleges 'Intervenor's claims are barred, in whole or in part by the doctrines of waiver; estoppel; laches; . . . and unclean hands.'"  (*Id.* at 2).  In their response, Defendants seem to assert Villalobos committed several misrepresentations, which "establish their

46

affirmative defenses of waiver, estoppel, and unclean hands." (ECF No. 161 at 9, 17). Further, Defendants argue an "administrative claim was never filed against Advantage; thus, the Plaintiffs are barred by limitations, laches, and failure to exhaust administrative remedies." (*Id.*).

Here, Defendants respond to the EEOC and Villalobos' Motions for Partial Summary Judgment (ECF Nos. 143, 154) in one Response (ECF No. 161). Defendants do not separate their arguments in their Response as to Villalobos and the EEOC, but rather make arguments against them collectively. Because the Court recommends the EEOC's Motion for Partial Summary Judgment be granted, the Court also recommends Villalobos' Motion for Partial Summary Judgment be granted, as there is no separate argument to address as to Villalobos.

###    E.    Ryan's Pointe's Motion for Summary Judgment

Ryan's Pointe moves for summary judgment on three grounds: arguing the EEOC and Villalobos cannot prove (1) Ryan's Pointe was an "employer"; (2) the existence of or attempt to negotiate a contract between Villalobos and Ryan's Pointe; and (3) Ryan's Pointe took adverse action against Villalobos. (ECF No. 144 at 2). The EEOC and Villalobos filed Responses in opposition to Ryan's Pointe's Motion for Summary Judgment. (ECF Nos. 155–156). However, Villalobos "adopts and incorporates by reference the argument,

authority, and evidence set forth by the EEOC in its Response." (ECF No. 155 at 1–2). As such, the Court will refer only to the EEOC's Response (ECF No. 156) on behalf of the EEOC and Villalobos (collectively, "Plaintiffs").

Ryan's Pointe's entire basis for its Motion for Summary Judgment can be narrowed down to whether Ryan's Pointe is an employer that can be held liable under Title VII, including whether Ryan's Pointe is defined as an employer, whether Ryan's Pointe and Villalobos had or negotiated an employment contract, and whether Ryan's Pointe was involved in Villalobos' termination. (*See* ECF No. 144 at 8–9). Plaintiffs argue Ryan's Pointe and Advantage were an integrated enterprise; thus, Defendants both qualify and can be held liable as Villalobos' employer. (ECF No. 156 at 9).

The Court has previously discussed and determined that the EEOC has established Defendants operated as an integrated enterprise and Defendants fail to establish that, as a matter of law, they did not operate as an integrated enterprise. *See Mod. Grp., Ltd.*, 2024 WL 1288634, at *4–7. Accordingly, Ryan's Pointe's arguments that it is not Villalobos' employer, that it never negotiated an employment contract with Villalobos, and that it was not involved in Villalobos' termination are without merit as Defendants were operating an integrated enterprise.

48

Ryan's Pointe raises no new or different arguments in their Motion for Summary Judgment (ECF No. 144) that changes this analysis.  Moreover, the Court also notes Ryan's Pointe includes no case law or authority in their Motion for Summary Judgment to support their position.  As such, the Court recommends denying Ryan's Pointe Motion for Summary Judgment on this ground, as it cannot establish that it is not an employer as a matter of law.  *See Perry v. Pediatric Inpatient Critical Care Servs., P.A.*, 611 F. Supp. 3d 363, 375 (W.D. Tex. 2020), *aff'd sub nom. Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918 (5th Cir. 2021) ("A single employer situation exists where two nominally separate entities are actually part of a single integrated enterprise (e.g., parent and wholly-owned subsidiary corporations, or separate corporations under common ownership and management).").

### F.    The EEOC's Motion to Exclude Expert Testimony

The EEOC filed a Motion to Exclude Expert Testimony of Defendants' Vocational Rehabilitation Consultant Joanna Vasquez ("Vasquez").  (ECF No. 145).  The EEOC argues "Vasquez's testimony lacks proper factual and legal bases and is inconsistent with the Fifth Circuit's opinion."  (*Id.* at 1).  Defendants argue Vasquez's testimony should not be excluded because she "provides relevant, reliable, and well supported opinions in this case which will benefit the fact finder and the Court in evaluating the merits of the claims

brought by the [EEOC]." (ECF No. 157 at 1). As a vocational rehabilitation consultant, Vasquez provided testimony that Villalobos is unqualified to perform as a property manager for Defendants and testified that it is "presumptuous and without merit" that Villalobos would have sustained the apartment manager role for over ten years. (ECF No. 145-2 at 9–10).

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *See Simpson v. James*, 903 F.2d 372, 378 n.20 (5th Cir. 1990). Federal Rule of Evidence Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

"Under [Federal] Rule [of Evidence] 702, the court must determine whether the proposed expert witness has training or experience, and will offer opinions, sufficiently related to the issues and evidence before the court for the expert's testimony to assist the trier of fact." *Flores v. Harris*, No. 4:17-cv-3817, 2019 WL 1426313, at *11 (S.D. Tex. Mar. 29, 2019). The court must also make a "preliminary assessment of whether that reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or

methodology can be applied to the facts at issue." *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993)).

When a *Daubert* challenge is made to the testimony of a proposed expert, "a district court must create a record of its *Daubert* inquiry and articulate its basis for admitting expert testimony." *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 201 (5th Cir. 2016) (internal quotations omitted). The court's gatekeeping role, ensuring that testimony is relevant and reliable, extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Under Federal Rule of Evidence 702, the Court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based. An expert may not present opinion testimony that goes beyond the scope and extent of her expertise. *See Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009).

### 1.    Qualification for the Position

First, the Court addresses whether Vasquez's opinion that Villalobos is not qualified for the position of property manager is admissible under Federal Rule of Evidence 702. The EEOC argues Vasquez's opinion that Villalobos is

not qualified as the property manager should not be admitted because (1) Vasquez's report is contradicted by the Fifth Circuit's opinion, (2) renovation experience was not a requirement for the property manager position, (3) a bachelor's degree was not required for the property manager position, and (4) Villalobos' purported performance issues did not render her unqualified. (ECF No. 145 at 5–9).

As a preliminary matter, the EEOC argues Vasquez's report is contradicted by the Fifth Circuit's opinion. (*Id.* at 6). Specifically, the EEOC claims issues of law or fact decided on appeal may not be reexamined by the district court upon remand. (*Id.*). Further, the EEOC cites the law of the case doctrine, which states, "absent manifest error, or an intervening change in the law, an appellate court's decision of a legal issue, whether explicitly or by necessary implication, establishes the law of the case and must be followed in all subsequent proceedings in the same case." (*Id.* (quoting *Carnival Leisure Indus., Ltd. v. Aubin*, 53 F.3d 716, 718–19 (5th Cir. 1995))). However, here the Fifth Circuit held, under the summary judgment standard, the EEOC proffered sufficient evidence of Villalobos' qualifications to establish a prima facie case of discrimination. *Equal Emp. Opportunity Comm'n v. Ryan's Pointe Houston, L.L.C.*, No. 19-cv-20656, 2022 WL 4494148, at *6 (5th Cir. Sept. 27, 2022). This holding does not preclude an expert from testifying on the same

issue at trial.  The Fifth Circuit did not issue a legal decision that Villalobos was qualified for the position, but rather determined that the EEOC proffered enough evidence to survive the Defendants' motions for summary judgment on appeal.  *See id.*  As such, the Court may consider Vasquez's opinion so long as it is admissible.

In *United States v. City of Houston, Tex.*, the defendant argued the expert testimony of Dr. Wainwright should be excluded because:

> [his] opinions are unreliable because he (1) failed to base his damages calculations on Draycott's gross earnings, (2) relied on improper assumptions regarding Draycott's earnings from higher classification and overtime pay, (3) improperly assumed that Draycott would have worked until age 56, (4) failed to mention or analyze Draycott's ability to mitigate her losses by future employment, (5) improperly assumed that HFD would have provided Draycott an annual salary increase of 2.05%, and (6) failed to base his pension-related damages on facts.

No. 18-cv-0644, 2020 WL 2516603, at *12 (S.D. Tex. May 15, 2020).  However, the court disagreed and denied defendant's motion to exclude expert testimony because the defendant did "not challenge Dr. Wainwright's qualifications, training, or experience to provide an economic estimate of Draycott's economic damages stemming from her constructive discharge.  Nor does the [defendant] challenge any of Dr. Wainwright's calculations or methodologies."  *Id.*  "Instead, the [defendant] challenges the bases and sources of his opinions and variables used in his calculations."  *Id.*  "If Dr. Wainwright missed any

important facts, the oversight should go to the weight of his opinions, not to their admissibility." *Id.* (citing *Puga v. RCX Solutions, Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility.")).

Here, similar to *United States v. City of Houston, Tex.*, 2020 WL 2516603, at *12, the EEOC neither challenges Vasquez's qualifications, training, or experience nor the methodologies Vasquez used in determining Villalobos' qualification as a property manager. (*See* ECF No. 145 at 5–9). Rather, the EEOC challenges the bases and sources for Vasquez's opinions. (*See id.*).

For instance, the EEOC argues Vasquez's opinion that Villalobos is unqualified for the position because she lacked expertise in property management renovations has no factual basis because the job description does not provide that renovation experience is required, her termination paperwork does not list her purported lack of renovation experience as a reason for termination, and the Fifth Circuit rejected the assertion that the property manager was required to have renovation experience.[5] (*Id.* at 5–7). Because

---

[5] The Fifth Circuit held that "whether renovation experience constituted a necessary employment qualification is a disputed question of fact" and "[t]he record—taken in the light most favorable to the EEOC—suggests renovation experience was not a necessary job qualification." *Equal Emp. Opportunity Comm'n*, 2022 WL 4494148, at *6. The Fifth Circuit did not "reject[] Vasquez's conclusion that the Defendants' property manager was required to have renovation experience" as the EEOC asserts, but rather, under the summary judgment

these arguments attack Vasquez's bases and sources of her opinion, these issues go to the weight of the evidence rather than admissibility of such evidence. *See Puga*, 922 F.3d at 294 ("Particularly in a jury trial setting, the court's role under Rule 702 is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role—the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration."). As such, this portion of Vasquez's opinion will not be excluded at trial.

With respect to Vasquez's opinion that Villalobos lacked post-high school education, the EEOC argues this opinion should be excluded because the O*NET data Vasquez relied upon failed to include an individualized assessment and ignored the fact that Rowghani, Johnson, and Dusek did not have bachelor's degrees. (ECF No. 145 at 7–8). However, because these arguments attack Vasquez's bases and sources of her opinion, these issues go to the weight of the evidence rather than admissibility of such evidence. *See Puga*, 922 F.3d at 294. As such, this portion of Vasquez's opinion will not be excluded at trial.

Next, with respect to Vasquez's opinion that Villalobos is not qualified for the property manager position due to performance issues, the EEOC argues

standard, held the EEOC proffered sufficient evidence of Villalobos' qualifications to establish a prima facie case of discrimination. *See id.* As such, this argument is unavailing.

this opinion should be excluded because "Vasquez appears to solely rely on the testimony of . . . Dusek" and failed to provide any elaboration or reasoning in her assessment of Villalobos' performance issues.  (ECF No. 145 at 8–9). Defendants argue Vasquez formulated this opinion by applying her experience and knowledge, a review of the records, and Dusek's deposition testimony regarding Villalobos' job performance.  (ECF No. 157 at 9).

The Court agrees with Defendants.  The Court notes the EEOC's argument that an expert cannot solely rely upon and recite deposition testimony as their expert opinion.  *See Robroy Indus.-Tex., LLC v. Thomas & Betts Corp.*, No. 2:15-cv-512, 2017 WL 1319553, at \*9 (E.D. Tex. Apr. 10, 2017) ("Ms. Salters' testimony . . . is inadmissible because it simply parrots deposition evidence and exhibits produced during the pretrial process. Ms. Salters' testimony on that issue would not be amenable to meaningful cross-examination, because her opinions on that topic are not the product of her expertise, but instead simply constitute her assessment of the particular parts of the record on which she has chosen to rely.").

However, it appears that in addition to assessing Dusek's deposition testimony, Vasquez applied her expertise as a vocational counselor/expert and reviewed the records available to her in deducing her opinion.  (ECF No. 145-2 at 9).  Vasquez states that, in formulating her opinion that Villalobos is

56

unsuitable for the managerial role due to her performance issues, she applied her expertise, reviewed the records, and highlighted performance issues that Dusek testified to in a deposition. (*See id.* at 9–10). Because Vasquez did not solely rely upon Dusek's testimony in determining suitability for the position, but rather states she did an independent review, the Court will not exclude Vasquez's opinion on this basis. *See Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013) ("Although in forming an independent opinion an expert can rely on information provided by a party's attorney, an expert cannot forgo his own independent analysis and rely exclusively on what an interested party tells him."). Further, "[a]s a general rule, questions regarding the scientific bases of an expert's opinion 'affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" *Slaughter v. S. Talc Co.*, 919 F.2d 304, 307 (5th Cir. 1990) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

As such, this portion of Vasquez's opinion will not be excluded at trial.

## 2.    Continued Position as Property Manager

Next, the Court addresses whether Vasquez's opinion that Villalobos would not have continued in her position as property manager is admissible under Federal Rule of Evidence 702.

57

In forming this opinion, Vasquez considered Villalobos' work history after termination, the sale of Ryan's Pointe, Villalobos and Dusek's deposition testimony, and Villalobos' employment history.  (ECF No. 145-2 at 10–11). Vasquez also states,

> Careful consideration has been given to the data contained with this file. The opinions given in this report are based on my education, training, and 18+ years of experience working in the field of vocational counseling. Standard accepted methodologies to determine employability and earning capacity as published by a consensus of members in the 2009 International Association of Rehabilitation Professionals (IARP) white paper (Robinson, 2014) have been utilized in analyzing this case.

(*Id.*).

First, the EEOC argues Vasquez's opinion is speculative and fails to "identify any facts to support her conclusion that Villalobos would not have continued her employment with Defendants after the sale of the property." (ECF No. 145 at 10).  However, this assertion is inaccurate because Vasquez considers the fact that "Villalobos' work history after termination . . . includes 16 separate jobs in a ten (10) year span."  (ECF No. 145-2 at 10).  As such, Vasquez concludes that "[t]he notion that Ms. Villalobos would have sustained the apartment manager role for over ten (10) years contradicts her actual employment trajectory."  (*Id.*).  Further, Vasquez considers Dusek and Villalobos' testimony where they each testify that it is very typical in the industry for new management to bring their own team or staff when discussing

58

the sale Ryan's Pointe. (*Id.*). In support of this assertion, Vasquez points to "Villalobos' employment history when she was released from her employment with Claye Properties, Inc. in December 2014 after the newly acquired supervisor brought in her own team." (*Id.*). For the EEOC to argue that Vasquez's opinion is entirely speculative and that she does not identify any facts to support her opinion is not accurate with Vasquez's assessment. (*See id.*; *see also* ECF No. 145 at 10). As such, this argument is unavailing.

Next, the EEOC challenges the reliability and application of principles and methods that Vasquez used in her opinion with respect to her finding that Villalobos would not have continued in her position as property manager. (ECF No. 145 at 10). To support this argument, the EEOC claims Vasquez did not adequately explain how her experience leads to her conclusions. (*Id.* at 11 (quoting *Powell v. Anheuser-Busch Inc.*, No. 09-cv-729, 2012 WL 12953439, at *6–7 (C.D. Cal. Sept. 24, 2012) ("*Powell*")). The EEOC relies heavily upon *Powell* in its assertion that Vasquez did not adequately explain her experience and how it led to her opinions. (*Id.*). However, the Court in *Powell* held that the expert's "opinions are unreliable in large part because he relies on the mere fact of his experience as a Vocational Rehabilitation Consultant to support his conclusions and he, in essence, requests the Court to take his word for it rather

than applying his specialized knowledge to the facts of this case." 2012 WL 12953439, at *6.

Here, contrary to *Powell*, Vasquez does not solely rely upon her experience. (*See* ECF No. 145-2). Vasquez relies upon her experience, the records available to her, deposition testimony, and applied "[s]tandard accepted methodologies to determine employability and earning capacity as published by a consensus of members in the 2009 International Association of Rehabilitation Professionals (IARP) white paper (Robinson, 2014)." (*Id.* at 10–11). Thus, the EEOC has not shown that Vasquez's opinion is unreliable and the EEOC does not specifically attack the use of Vasquez's application of methodologies published by "the 2009 International Association of Rehabilitation Professionals (IARP) white paper (Robinson, 2014)." (*Id.*). As such, this argument is unavailing.

Accordingly, the Court recommends the EEOC's Motion to Exclude Expert Testimony of Defendants' Vocational Rehabilitation Consultant Vasquez be denied.

### G.   The EEOC's Motion for Sanctions for Spoliation of Payroll Records and Personnel Files

The EEOC requests sanctions for the "fail[ure] to preserve payroll records and fail[ure] to preserve and/or destroyed personnel files used in

Defendants' businesses from June 3, 2011, through January 31, 2013." (ECF No. 146 at 1). Specifically, the EEOC argues,

> Defendants[] failed to preserve their own payroll records from June 3, 2011, through December 31, 2011; failed to preserve unredacted payroll records from its agent Creative Property Management Co. ("Creative") from January 1, 2012 through December 31, 2012; and failed to preserve and/or destroyed personnel files for the staff at the four Houston apartment complexes which would have included performance evaluations and/or discipline documents, as well as dates of hire and termination for all Advantage employees.

(*Id.* at 1–2). The EEOC seeks such payroll records and personnel files to determine the number of employees Defendants employed in order to then determine the amount of recoverable damages under 42 U.S.C. § 1981a(b)(3).[6] (ECF No. 146 at 2). As such, the number of employees is relevant to the limitations on damages sought.

---

[6] 42 U.S.C. § 1981a(b)(3) provides: "The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—

(A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;

(B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and

(C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and

(D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000."

"The spoliation of evidence doctrine governs the intentional destruction of evidence." *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 573 (5th Cir. 2020). "If a party *intentionally* destroys evidence, the trial court may exercise its discretion to impose sanctions on the responsible party." *Id.* (emphasis in original). To establish a spoliation claim, the moving party must show: "(1) the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the moving party must show that the spoliating party acted in bad faith." *Id.* at 574 (citing *Port of S. La. v. Tri-Parish Indus.*, 927 F. Supp. 2d 332, 346 (E.D. La. 2013)).

"The duty to preserve material evidence arises not only during litigation, but also during the period before litigation when a party knew or should have known that litigation was imminent." *Lou v. Lopinto*, No. 21-cv-80, 2022 WL 16685539, at *5 (E.D. La. Nov. 2, 2022). "A party to litigation has a duty to preserve evidence once 'the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant.'" *Id.* (quoting *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015)). "When a party should reasonably anticipate litigation, it must preserve what it knows, or reasonably should know, is relevant in the action or reasonably likely to be

requested during discovery and/or is the subject of a pending discovery request." *Id.*

Here, the EEOC argues that Defendants received notice of Villalobos' claims on July 25, 2012 in a letter Treiman sent EEOC Investigator John M. Krieger on September 12, 2012[7] when the Charge was filed.  (ECF No. 146 at 2–3).  In the letter Treiman sent, he states, "[b]ased on Ms. Villalobos' counsel's July 25, 2012 demand letter, it appears that Ms. Villalobos bases her hostile work environment claim on her allegation . . ." (ECF No. 146-2 at 7).  However, this demand letter was acknowledged in connection to a hostile work environment claim—not the national origin and sex discrimination claims at issue.  (*See id.*).  Further, the EEOC did not attach the demand letter as an exhibit to their motion for the Court to consider its contents.  Accordingly, the Court is inclined to use the date the Charge was filed as the date Defendants received notice of the instant claims and their duty to preserve arose, which was September 12, 2012.  (ECF No. 146-3 at 2); *see Manning v. Chevron Chem. Co.*, LLC, 332 F.3d 874, 878 (5th Cir. 2003) ("One of the central purposes of the employment discrimination charge is to put employers on notice of the existence and nature of the charges against them." (quotations omitted)).

---

[7] The EEOC mistakenly lists the date the Charge was filed as September 10, 2012. However, the Court notes the date the Charge was filed was September 12, 2012.  (ECF No. 146-3 at 2).

Moreover, "[w]here a charge of discrimination has been filed . . . the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action." 29 C.F.R. § 1602.14. The Court notes Defendants argue the EEOC failed to timely pursue payroll records and personnel files. (ECF No. 159 at 7, 9–10). Defendants' argument that the EEOC did not timely pursue such records is without supporting authority and fails to acknowledge that a duty to preserve relevant evidence was triggered once the Charge was filed. As such, the Court will focus on whether Defendants acted with bad faith or a culpable state of mind regarding the alleged failure to preserve the records. *See Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) ("The district court concluded, however, that even if Guzman had been under a duty to preserve evidence, his conduct did not merit sanctions or adverse instructions because Appellants produced no evidence suggesting bad faith.").

"The 'state of mind' spectrum ranges from no culpability through negligence, gross negligence and willfulness to bad faith." *Id.* "While perfection in evidence preservation is no doubt the goal, mere errors or mistakes will not support spoliation sanctions" and it is insufficient to show a party was acting negligently in failing to preserve the evidence. *Id.* "[T]he Fifth Circuit has held that such a sanction may only be imposed upon a

64

showing of 'bad faith' or intentional conduct by the spoliating party." *Id.* (collecting cases). "[T]o establish bad faith or culpable state of mind, the spoliator must act with fraudulent intent and a desire to suppress the truth." *Id.* However, "bad faith may be inferred by evidence that a party has misrepresented the existence of documents or allowed the destruction of documents, and had explanations of spoliation that were not credible." *Id.* at *7. "[I]n the context of spoliation, . . . 'bad faith is a question of fact like any other.'" *Van Winkle v. Rogers*, 82 F.4th 370, 378 (5th Cir. 2023) (quoting *Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013)). The movant must show bad faith by a preponderance of the evidence. *See Yelton v. PHI, Inc.*, 284 F.R.D. 374, 377 (E.D. La. 2012) ("The Court finds that the evidence upon which the Magistrate Judge relied was sufficient to support a finding of bad faith by a preponderance of the evidence.").

## 1.    **Payroll Records**

The EEOC argues Defendants failed to preserve unredacted payroll records that provide the dates of termination for employees, making the EEOC unable to determine the number of people employed by Defendants. (ECF No. 146 at 11). Defendants argue they complied with a court order dated December 14, 2015, where they turned over payroll records for the three months preceding Villalobos' termination and three months following her termination,

in which the payroll records were redacted for employee confidentiality purposes. (ECF No. 159 at 1).

The EEOC argues Defendants failed to preserve or destroyed payroll records and seeks to "be permitted to count all employees from 2012 and only remove from that list those for whom the Defendants have provided a termination date or other, irrebuttable evidence of their final date of employment, thus bringing Defendants' total number of employees to more than 100 employees." (ECF No. 146 at 13).

Here, the only reference the EEOC makes regarding Defendants' degree of culpability in failing to preserve the payroll records is "Defendants' counsel has admitted Defendants failed to preserve the records. This admission is sufficient to satisfy the bad faith element." (ECF No. 146 at 11). Defendants do admit that the records cannot be located but credit the inability to find the payroll records to the multiple replacements of the third-party company that maintained such records. (ECF No. 159 at 7).

The EEOC's two sentence argument that an admission of failure to preserve payroll records equates to satisfaction of the bad faith requirement is unfounded. "[W]hen evidence has been merely misplaced, and there is no greater showing of intentional destruction, the Fifth Circuit has routinely held that an inference of bad faith is not appropriate." *Nale v. Finley*, No. 3:19-cv-

00473, 2020 WL 9421164, at *2 (W.D. La. Dec. 2, 2020); *see Hale v. City of Biloxi*, 731 Fed. App'x 259, 265 (5th Cir. 2018) (holding that the district court did not err in refusing to draw an adverse inference where footage from a police body camera was not able to be located in a suit for use of excessive force, but the plaintiff had not shown any evidence that the camera footage had been destroyed on purpose or in bad faith); *Ford v. Potter*, 354 Fed. App'x 28, 33 (5th Cir. 2009) (holding where a defendant could not locate interview notes requested by the plaintiff, the district court did not err in declining to draw an adverse inference for spoliation where the plaintiff could not affirmatively show that the notes were destroyed, and argued only that the defendant's inability to locate the notes "smell[ed] bad").

The Court further acknowledges that bad faith may be inferred in certain cases. For example:

> [T]he United States District Court for the Southern District of Texas held that the bad faith of defendant-employees could be inferred where the employees (1) knew about the pending litigation over noncompetition and non-solicitation agreements when they deleted relevant emails, (2) provided inconsistent explanations for deleting the emails, and (3) failed to disclose information during discovery about personal email accounts that were later revealed as having been used to obtain and disseminate information from the employer.

*Nale*, 2020 WL 9421164, at *2 (citing *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 644 (S.D. Tex. 2010)). However, this level of

misrepresentations is not present in the instant case. For instance, Defendants did produce payrolls earlier in litigation, although redacted, and believed they complied with the previous court order. (ECF No. 159 at 1). The EEOC presents no evidence that rises to the level of an inference of bad faith as found in *Rimkus Consulting Grp., Inc.*

The evidence upon which the EEOC relies upon is insufficient to support a finding of bad faith by a preponderance of the evidence with respect to the payroll records. As such, the Court denies the EEOC's Motion for Sanctions for Spoliation of Payroll Records.

### 2. Personnel Files

The EEOC argues that although Defendants produced some personnel files, the records are incomplete and missing information, which is relevant because it would contain hire and termination dates of the employees. (ECF No. 146 at 13–14). Further, the EEOC claims, based on testimony, Dusek and Johnson maintained the personnel files and knew the location of such files. (*Id.* at 13). The EEOC alleges the "disappearance of the personnel files cannot credibly be explained except by finding an affirmative act by Defendants in bad faith." (*Id.* at 14). The EEOC argues Defendants failed to preserve or destroyed payroll records and seeks:

> (1) a finding of bad faith in failing to maintain payroll and personnel records; (2) an order permitting EEOC to introduce

evidence of, and arguments about, the Defendants destruction of personnel files and employment records; what such records would have shown; and possible motives for the destruction; and (3) a permissive inference, at trial, that had the personnel files been preserved – especially those of Villalobos – they would have shown that no such performance issues were ever recorded.

(*Id.* at 15).

Here, the EEOC makes three arguments regarding bad faith: (1) "a finding of bad faith is warranted here based upon Defendants' failure to comply with federal regulations, which require all personnel records to be maintained for at least one year, and more for terminated employees"; (2) "the disappearance of the personnel files cannot credibly be explained except by finding an affirmative act by Defendants in bad faith"; and (3) "Defendants' willful lack of knowledge, in the face of testimony from Villalobos' own manager and replacement, is simply not credible and the mysterious disappearance of all personnel files maintained by the Defendants – and not third-party vendors – can be explained only by an affirmative act in bad faith." (ECF No. 146 at 14–15).

Defendants counter that "[t]here is no evidence that if the files existed, Defendants intentionally destroyed same." (ECF No. 159 at 10). To support Defendants' notion that they are unaware of the location or existence of the personnel files, Defendants contend:

69

Personnel files which contain the new hire documentation, W-4 form, I-9, would have been gathered by the Property Operations Group headed by Carolyn Howard and sent to the PEO service in order to on-board an employee. As such, the file kept at the property quite possibly could have been seen as duplicative as the payroll company had it and could have been destroyed when the property was sold or given to the new owner if they were hiring the onsite team in place. The property sold in October of 2015 and since this was nine years ago, no-one who was involved with the property during the relevant time frame can verify that any payroll files were kept at the property, were destroyed or were given to the new owner. . . . It is just as plausible that Dusek was mistaken, given the other inconsistencies in her testimony, or that the records were transferred to the new owner upon the sale of the property. If Dusek did keep Personnel files, then they were kept in Texas . . . and the corporate office where Robert Hayman, Michael Treiman and Sherry Fisher were in California did not have those records. What is clear is that there was no willful destruction of records relevant to the time period of the case.

(*Id.* at 6).  It is clear the EEOC and Defendants present contradictory evidence as to bad faith.

"If a genuine dispute of material fact exists as to bad faith, a jury should make that determination." *Van Winkle*, 82 F.4th at 378.  "Courts in this circuit have sent such fact questions to the jury before.  For instance, a panel of this court affirmed a district court's adverse inference jury instruction, permitting jurors to determine bad faith."  *Id.* (citing *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 906 & n.4 (5th Cir. 2010)).  Jury instructions can allow an inference that evidence that is destroyed or a party failed to preserve "would have been detrimental to the defendants' case if jurors 'determined that the

evidence was in the control of the defendants, that they had an obligation to preserve it, that the destroyed evidence was relevant to the litigation, and that the evidence was destroyed intentionally and in bad faith.'" *Id.* (quoting *Union Pump Co.*, 404 F. App'x at 903–04).

These allegations by the EEOC and Defendants create a fact question on bad faith. For example, the EEOC points to testimony that stated personnel files existed and described where they were stored. (ECF No. 146 at 8). Meanwhile, Defendants dispute having possession of such files through the changing of employment and termination of employees, challenge the credibility of employees' testimony the EEOC relies upon, claim there is no formal retention policy, and fail to explain where these files are or how they can be produced. (*See* ECF Nos. 159, 171). These circumstances create a fact question on bad faith, necessitating a jury determination. *See Van Winkle*, 82 F.4th at 379 ("Prime destroyed the most crucial piece of evidence just weeks after learning that its tire may have caused a car accident; Prime cannot explain why it transported the tire to its Salt Lake facility or what happened to the tire following the accident; and Prime cannot demonstrate it had any formal preservation or retention policy for its equipment, like tires, that may have caused an injury. These circumstances create a fact question on bad faith, necessitating a jury determination.").

Because there is question of fact regarding whether Defendants acted in bad faith in failing to preserve personnel files, the Court denies the EEOC's Motion for Sanctions for Spoliation of Payroll Records and Personnel Files as to the personnel files and allow a jury to determine bad faith.

### H.    The EEOC's Motion for Sanctions for the Spoliation of ESI

The EEOC requests sanctions against Defendants, arguing they "failed to preserve [ESI] of alleged[ly] discriminating officials and material witnesses from 2011 to early 2013, in bad faith, and in violation of federal law."  (ECF No. 166 at 7).

Federal Rule of Civil Procedure 37(e) governs the failure to preserve ESI. Under Federal Rule of Civil Procedure 37(e),

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.[8]

---

[8] The Court notes this is the amended Federal Rule of Civil Procedure 37(e) that was issued on December 1, 2015, shortly following the filing of the instant suit.  However, the Court will apply the amended Federal Rule of Civil Procedure 37(e) because "[i]t does not

However, before a court applies Federal Rule of Civil Procedure 37(e) sanctions, it must determine whether the following predicate elements have been established: "'(1) there is ESI that should have been preserved; (2) that ESI has been lost; (3) the ESI was lost because of a party's failure to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced' through additional discovery." *Jim S. Adler, P.C. v. McNeil Consultants, LLC*, No. 3:19-cv-2025, 2023 WL 2699511, at *8 (N.D. Tex. Feb. 15, 2023) (quoting *Cleary v. Am. Airlines, Inc.*, No. 4:21-cv-184, 2022 WL 5320126, at *7 (N.D. Tex. July 22, 2022)). "'The party seeking the spoliation sanction bears the burden of proof.'" *United Healthcare Servs., Inc. v. Rossel*, No. 3:21-cv-1547-BT, 2024 WL 1252365, at *5 (N.D. Tex. Mar. 21, 2024) (quoting *Castro v. Wal-Mart Real Est. Bus. Tr.*, 645 F. Supp. 3d 638, 646 (W.D. Tex. 2022)). The Court will assess the EEOC's required showings under Rule 37(e) against the preponderance of the evidence standard. *Id.* (quoting *Jim S. Adler, P.C.*, 2023 WL 2699511, at *9) (quotations omitted)).

---

create a new duty to preserve. Rather, the current version of Rule 37(e) specifies findings the court must make before determining whether sanctions are appropriate and the sanctions that may be imposed in the exercise of the court's broad discretion based on those findings." *Small v. Univ. Med. Ctr.*, No. 2:13-cv-0298, 2018 WL 3795238, at *67 (D. Nev. Aug. 9, 2018). Further, "[i]t is not unjust to apply the 2015 version of Rule 37(e) because it 'does not govern conduct; a party has the same legal duty to preserve evidence for use in litigation today as before the amendments.'" *Id.* (quoting *Sec. Alarm Fin. Enters., L.P. v. Alarm Prot. Tech., LLC*, No. 3:13-cv-00102, 2016 WL 7115911, at *3 (D. Alaska Dec. 6, 2016)).

The ESI the EEOC claims has been destroyed or lost is metadata and documents on Dusek's laptop, emails to and from Dusek's Gmail account, and ESI from "custodians of greatest interest." (ECF No. 166 at 16–18).

"As to the first predicate element, '[a] party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant.'" *Id.* (quoting *Guzman*, 804 F.3d at 713). Here, it has been established that the date the Charge was filed is the date Defendants received notice of the claims and their duty to preserve arose, which was September 12, 2012.

## 1.    Dusek's Laptop

The EEOC argues the metadata that has been lost from Dusek's laptop includes,

> [T]he word processing program used to create the purported verbal and written warnings of March 14, 2012. (Ex. 2). The file name for the attachments was "MX-2610N_20120730_153335.pdf." That is a file name created by the Sharp 2610N of the attachment to the "backup for Maggie" email. (Ex. 2). Defendants produced these same documents as exhibits to their position statement to the EEOC. The email was sent by Dusek to COO Treiman. However, the typed "Statement regarding Maggie Villalobos" does not appear to have been an attachment to that same email.

(ECF No. 166 at 12). As such, the EEOC claims it is "unable to prove that the documents were created after Villalobos' termination and established the falsity of Defendants' defense." (*Id.* at 16). Defendants argue that in response

74

to a May 16, 2016 order to produce metadata from Dusek's computer, they supplied an "HPD Archived Old Incident Report Public Release Record . . . showing that the computer was stolen in May of 2014." (ECF No. 160 at 4). The EEOC contests the validity of the identification of the laptop in the police report, but Defendants claim "the report miss identified [sic] the computer as an Acer laptop when in fact it was an Asus laptop." (*Id.*).

As to the second predicate element—whether the ESI on Dusek's laptop has been lost—Defendants concede the metadata from Dusek's laptop is lost as they claim the laptop was stolen. (ECF No. 160 at 1). As such, the ESI on Dusek's laptop has been lost.

Next, the Court moves to the third predicate element—whether the ESI on Dusek's laptop was lost because of Defendants' failure to take reasonable steps to preserve it. The EEOC argues Defendants never forensically imaged Dusek's laptop because had they done so, the metadata could have been produced. (ECF No. 166 at 16–17). Further, the EEOC argues "Counsel for Defendants never addressed the preservation efforts taken by Defendants with respect to Dusek's laptop from the time they should have reasonably anticipated litigation, . . . until the purported theft on May 14, 2014." (*Id.* at 12). The EEOC alleges Defense Counsel, Caroline Russe, stated that she reached out to Dusek regarding the location of the laptop she used to draft the

write-ups who stated it was at the Property and that the new property manager, Chana Flores, was using the laptop. (*Id.* at 11). Further, the EEOC alleges Caroline Russe stated the laptop was in Chana Flores' vehicle when it was stolen. (*Id.*).

Defendants do not address the preservation efforts taken before the laptop was allegedly stolen. (*See* ECF No. 160). Rather, Defendants emphasize the theft of the laptop. (*See id.*). Because Defendants took no measures in saving the ESI from Dusek's laptop before it was purportedly stolen and allowed new employees to use and take the laptop off the Property, Defendants failed to take reasonable steps to preserve the ESI on Dusek's laptop before it was stolen. *See Owens v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 695 F. Supp. 3d 750, 759 (M.D. La. 2023) ("Defendant either did not properly monitor or did not properly communicate to the relevant staff the need to preserve key data. Under the circumstances, Defendant took no meaningful steps to protect the data on the phones, which is why Defendant has no idea who deleted the data or when. This leads this Court to conclude that Defendant did not take reasonable steps to preserve the Sells' text communications.").

As to the fourth predicate element—whether the ESI on Dusek's laptop can be restored or replaced through additional discovery—Defendants have not

offered a way the ESI can be restored or replaced because of the alleged theft. (*See* ECF No. 160).

Because these four predicate elements exist as to the ESI on Dusek's laptop, "the Court then turns to the matter of possible remedies under Rules 37(e)(1) or 37(e)(2), which 'have different requirements before sanctions can be imposed and can lead to different sanctions.'" *Jim S. Adler, P.C.*, 2023 WL 2699511, at *9 (quoting *Richard v. Inland Dredging Co., LLC*, No. 6:15-cv-0654, 2016 WL 5477750, at *3 (W.D. La. Sept. 29, 2016)).     Under the subsections of Federal Rule of Civil Procedure 37(e), it allows courts:

- [T]o impose certain severe sanctions for the intentional failure of a party to preserve relevant ESI, but only after a finding that the party acted with the intent to deprive another party of the information's use in the litigation, and
- [I]f the court does not find that the spoliating party acted with an intent to deprive, but determines that the loss of ESI prejudiced another party, allows courts, under Rule 37(e)(1), to impose lesser sanctions in the form of measures no greater than necessary to cure the prejudice.

*Id.* (quoting *Castro v. Wal-Mart Real Est. Bus. Tr.*, 645 F. Supp. 3d 638, 646 (W.D. Tex. 2022) (quotations omitted)).  "For the court to adopt a presumption that lost ESI is unfavorable to Defendant or to instruct a jury to adopt such a presumption, the Court would have to find that Defendant intentionally deleted the ESI with the intent to deprive Plaintiffs of the use of the information." *Owens*, 695 F. Supp. 3d at 761 (citing FED. R. CIV. P. 37(e)(2)).

77

Here, the Court cannot find on the existing record that Defendants intended to deprive the EEOC of ESI on Dusek's laptop as they purport it was stolen and provide a police report.

With respect to Federal Rule of Civil Procedure 37(e)(1), the EEOC must show they are prejudiced by the lost ESI from Dusek's laptop. "Prejudice exists when spoliation prohibits a party from presenting evidence that is relevant to its underlying case." *Id.* at 760. The EEOC argues the loss of documents regarding verbal and written warnings to Villalobos prevents the EEOC from proving such "documents were created after Villalobos' termination and established the falsity of Defendants' defense." (ECF No. 166 at 16). Because Defendants cannot replace or restore this missing information, the EEOC is left with an incomplete record of disciplinary documents against Villalobos, which is relevant to the EEOC's claims. Moreover, as alleged by the EEOC, it is unable to show the disciplinary documents and warnings were not legitimate as they were created after Villalobos was terminated. (*Id.*). As such, the EEOC is prejudiced by the loss of the aforementioned ESI on Dusek's laptop and sanctions necessary to cure the prejudice are appropriate under Federal Rule of Civil Procedure 37(e)(1). *See Owens*, 695 F. Supp. 3d at 760–61.

Because the Court finds this loss of ESI prejudices the EEOC's presentation of its case, the Court determines that the appropriate sanction is

to "'"allow[ ] the parties to present evidence to the jury concerning the loss and likely relevance of [the lost ESI on Dusek's laptop] and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision."' *Jim S. Adler, P.C.*, 2023 WL 2699511, at *40 (quoting FED. R. CIV. P. 37(e), advisory committee's notes to 2015 amendments). "[T]his measure serves to cure the prejudice to [the EEOC] by having the jury be able to determine the weight and importance of what the [lost ESI] may have shown[.]" *Id.* (quoting *Wilson v. HH Savannah, LLC*, No. 4:20-cv-217, 2022 WL 3273714, at *2 (S.D. Ga. July 28, 2022) (quotations omitted)). The Court will not rule on the specific scope of admissible evidence with respect to the lost ESI on Dusek's laptop, but "affords the district judge with flexibility to determine the scope of the spoliation evidence to be presented at trial, including any argument that may be made to the jury on this issue, and to craft any related jury instructions on a full evidentiary record." *Id.* at *41 (quoting *Wilson*, 2022 WL 3273714, at *2 (quotations omitted)).

Further, the Court orders Defendants, jointly and severally, to pay the EEOC reasonable attorney's fees and costs incurred in drafting and filing this motion (ECF No. 166) and the reply in support (ECF No. 170) to cure the prejudice that the Court has found due to the loss of the ESI on Dusek's laptop. *See Jim S. Adler, P.C.*, 2023 WL 2699511, at *41. To be awarded attorney's

fees, the EEOC must file an application for attorney's fees, accompanied by supporting evidence establishing the amount of reasonable attorney's fees and costs to be awarded, within thirty (30) days of the issuance of this Memorandum, Recommendation, and Order.   The EEOC's application for attorney's fees "must be supported by documentation evidencing the 'lodestar'[9] calculation, including affidavits and detailed billing records, and citations to relevant authorities and must set forth the itemized number of hours expended in connection with the recoverable attorneys' fees described above as well as the reasonable rate(s) requested." *Jim S. Adler, P.C.*, 2023 WL 2699511, at *41 (citing *Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002)). Additionally, Defendants are allotted twenty-one (21) days to respond to the application for attorney's fees and the EEOC has fourteen (14) days to reply.

---

[9] "The lodestar method is a two-step process used to determine the amount of reasonable attorneys' fees. The court first calculates the 'lodestar' amount by multiplying the number of hours reasonably expended on the litigation by an appropriate hourly rate in the community for such work." *King v. United SA Fed. Credit Union*, 744 F. Supp. 2d 607, 611 (W.D. Tex. 2010) (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 319–20 (5th Cir. 1993)). "Once the lodestar amount has been calculated, the Court examines the amount and may increase or decrease the lodestar fee using the *Johnson* factors." *Id.* (citing *Shipes*, 987 F.2d at 319–20).  "The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he or she accepted the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Id.*  (citing *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717–18 (5th Cir. 1974)).

As such, the Court grants the EEOC's Motion for Sanctions for the Spoliation of ESI with respect to lost ESI on Dusek's laptop. *See BHI Energy I Power Servs. LLC v. KVP Holdings, LLC*, 730 F. Supp. 3d 308, 324–25 (N.D. Tex. 2024) (asserting magistrate judges have the authority to grant nondispositive sanctions, such as attorney's fees).

### 2.    Emails To and From Dusek

The EEOC argues emails to and from Dusek has been lost. (ECF No. 166 at 17). These emails include (1) emails relating to the recruitment and hiring of Johnson while Villalobos was still employed by Defendants, (2) emails "from Dusek to and from both Creative Property Management and ProSource Management Solutions (the two agents handling Defendants' payroll in 2012)," and (3) Dusek's emails to and from the mgr@ryanspointeapts.com email that Villalobos and Johnson used until late 2012 or early 2013. (*Id.* at 17–18).

As to the second predicate element—whether the emails have been lost—Defendants have conceded that whatever emails were not already produced have been lost. (*See* ECF No. 160). Defendants allege the emails are not obtainable because some emails were deleted. (*Id.* at 2–8). As such, the emails in question have been lost.

As to the third predicate element—whether the ESI was lost because of Defendants' failure to take reasonable steps to preserve it—Defendants assert

that they tried to remedy the loss of the emails when they became aware of the

issue in 2013. (*Id.* at 6). Specifically, Defendants allege:

> Apparently, the company had someone who was not that familiar
> with Gmail setup, and who had setup the accounts incorrectly. The
> person did not enable the vault function on all accounts . . .
> meaning as a user deleted an email it wasn't saved anywhere. The
> vault service is an additional license fee and it appears that
> whoever made the decision not to vault did it to save money for the
> newly started company, or the person wasn't aware of the feature
> or didn't ask anyone for advice. In any case, the vault service was
> not turned on until sometime in 2013.

(*Id.*). Defendants claim "the email for Bobbie Dusek was vaulted as of 2013

and does contain emails back to 2012. However, it will not contain every email

received by her or written by her given that the vault service wasn't enabled

until 2013." (*Id.*). Moreover, Defendants allege "[t]he Gmail professional email

system also contained a feature known as 'conversation view' . . . when a user

deleted the conversation thread, all incoming messages and outgoing messages

on that thread were also deleted from the user's email boxes – both sent and

received." (*Id.*). Defendants claim this practice stopped in 2013 when it was

discovered. (*Id.*). The Court acknowledges the EEOC's assertion that

Defendants have provided some of Dusek's relevant emails, but not the

entirety of her emails and the metadata attached to her Gmail account. (ECF

No. 166 at 13).

"[I]n cases involving ESI, to satisfy their preservation duties, parties must investigate and disable autodelete functions . . . at the onset of litigation if those accounts reasonably contain relevant information and it is reasonable under the circumstances of the case to do so." *Jim S. Adler, P.C.*, 2023 WL 2699511, at *17 (quoting *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 931 (N.D. Ill. 2021) (quotations omitted)). "The rationale behind directing litigants to investigate and disable autodelete functions is obvious: if ESI is relevant to litigation that may or has commenced, the Rules of Civil Procedure require that that data be preserved, which cannot be done if the data is set to autodelete and is ultimately deleted." *Id.* (quoting *DR Distribs., LLC*, 513 F. Supp. 3d at 933 (quotations omitted)).

Defendants had a duty to preserve relevant evidence as of September 12, 2012, and admitted they realized the vault feature was not enabled and emails were being deleted under the conversation view until sometime in 2013 when they cured these issues. (ECF No. 160 at 5–7). Because Defendants did not timely satisfy their preservation duties in investigating and preserving emails, they did not take reasonable steps in preserving such emails.

As to the fourth predicate element—whether the ESI can be restored or replaced through additional discovery—Defendants have not offered a way the emails can be restored or replaced. (*See* ECF No. 160). As such, Defendants

83

have not shown the emails at issue can be restored or replaced through additional discovery.

Because these four predicate elements exist as to the emails, "the Court then turns to the matter of possible remedies under Federal Rules of Civil Procedure 37(e)(1) or 37(e)(2), which 'have different requirements before sanctions can be imposed and can lead to different sanctions.'" *Jim S. Adler, P.C.*, 2023 WL 2699511, at *9 (quoting *Richard*, 2016 WL 5477750, at *3).

"For the court to adopt a presumption that lost ESI is unfavorable to Defendant or to instruct a jury to adopt such a presumption, the Court would have to find that Defendant intentionally deleted the ESI with the intent to deprive Plaintiffs of the use of the information." *Owens*, 695 F. Supp. 3d at 761 (citing FED. R. CIV. P. 37(e)(2)). Here, the Court cannot find on the existing record that Defendants intended to deprive the EEOC of emails to and from Dusek because Defendants assert that they did not realize emails were being deleted either due to the lack of the vault system or new hires deleting emails under the conversation view and that, upon discovery of this system, they remedied the preservation issue. Further, Defendants did not fail to produce all emails as they were able to produce a portion of emails that they were able to locate.

With respect to Federal Rule of Civil Procedure 37(e)(1), the EEOC must show they are prejudiced by the lost ESI from Dusek's laptop. "Prejudice exists when spoliation prohibits a party from presenting evidence that is relevant to its underlying case." *Id.* at 760. The EEOC argues the loss of emails to and from Dusek "handicaps the EEOC's ability to prove elements of its claims and the weaknesses in Defendants' defenses." (ECF No. 166 at 17). The EEOC claims lost emails would show discriminatory statements to support its claims and information on payroll, staffing, and termination which is relevant and necessary to prove damages. (*Id.* at 17–18). Although Defendants cannot replace or restore the missing emails, the Court acknowledges that some of these emails were allegedly sent before the duty to preserve arose. For instance, the EEOC refers to emails that were sent in 2012 and 2013; however, the duty to preserve arose on September 12, 2012. (*Id.* at 17–18, 24 ("[M]uch of the actual spoliation occurred much earlier, as early as 2012 or 2013, during a period in which the Defendants preservation obligations were governed by 29 C.F.R. § 1602.14.")). However, this does not negate the fact that Defendants did not timely satisfy their preservation duties in investigating and preserving emails and the EEOC alleges relevant emails were lost after the duty to preserve was invoked. *See Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 800 (N.D. Tex. 2011) ("The duty to preserve extends to the party's or potential

party's employees likely to have relevant information—the key players."
(quotations omitted)).  As such, the EEOC is prejudiced by the loss of the emails
to and from Dusek and sanctions necessary to cure the prejudice are
appropriate under Federal Rule of Civil Procedure 37(e)(1).  *See Owens*, 695 F.
Supp. 3d at 760–61.

Because the Court finds this loss of ESI prejudices the EEOC's
presentation of its case, the Court determines that the appropriate sanction is
to "'"allow[ ] the parties to present evidence to the jury concerning the loss and
likely relevance of [the lost emails to and from Dusek] and instructing the jury
that it may consider that evidence, along with all the other evidence in the
case, in making its decision.'"  *Jim S. Adler, P.C.*, 2023 WL 2699511, at *40
(quoting FED. R. CIV. P. 37(e), advisory committee's notes to 2015
amendments).  "[T]his measure serves to cure the prejudice to [the EEOC] by
having the jury be able to determine the weight and importance of what the
[lost ESI] may have shown[.]"  *Id.* (quoting *Wilson*, 2022 WL 3273714, at *2
(quotations omitted)).  The Court will not rule on the specific scope of
admissible evidence with respect to the lost emails to and from Dusek, but
"affords the district judge with flexibility to determine the scope of the
spoliation evidence to be presented at trial, including any argument that may
be made to the jury on this issue, and to craft any related jury instructions on

a full evidentiary record." *Id.* at *41 (quoting *Wilson*, 2022 WL 3273714, at *2 (quotations omitted)).

Further, the Court orders Defendants, jointly and severally, to pay the EEOC reasonable attorney's fees and costs incurred in drafting and filing this motion (ECF No. 166) and the reply in support (ECF No. 170) to cure the prejudice that the Court has found due to the lost emails to and from Dusek. *See Jim S. Adler, P.C.*, 2023 WL 2699511, at *41. To be awarded attorney's fees, the EEOC must file an application for attorney's fees, accompanied by supporting evidence establishing the amount of reasonable attorney's fees and costs to be awarded, within thirty (30) days of the issuance of this Memorandum, Recommendation, and Order. The EEOC's application for attorney's fees "must be supported by documentation evidencing the 'lodestar' calculation, including affidavits and detailed billing records, and citations to relevant authorities and must set forth the itemized number of hours expended in connection with the recoverable attorneys' fees described above as well as the reasonable rate(s) requested." *Id.* (citing *Tollett*, 285 F.3d at 367). Additionally, Defendants are allotted twenty-one (21) days to respond to the application for attorney's fees and the EEOC has fourteen (14) days to reply.

As such, the Court grants the EEOC's Motion for Sanctions for the Spoliation of ESI with respect to emails to and from Dusek that were lost after

the duty to preserve arose. *See BHI Energy I Power Servs. LLC,* 730 F. Supp. 3d at 324–25 (asserting magistrate judges have the authority to grant nondispositive sanctions, such as attorney's fees).

### 3.    Custodians of Greatest Interest

Here, the EEOC claims the ESI is missing with respect to "Custodians of Greatest Interest." (ECF No. 166 at 18). The EEOC lists Johnson, Dusek, Treiman, Hayman, Blum, and Hayman Advisors personnel as custodians of the greatest interest. (*Id.* at 18–19). However, it appears the EEOC is seeking correspondence among these individuals that relates to Defendants' defenses. (*See id.*). The EEOC does not assert that this correspondence is missing or lost. Without more clarity on what lost ESI correspondence the EEOC is seeking from these individuals, it appears this is more of a request for production rather than a spoliation of ESI assertion. As such, the Court denies the EEOC's Motion for Sanctions for the Spoliation of ESI as to the "Custodians of Greatest Interest."

## V.    Conclusion

Based on the foregoing, the Court **RECOMMENDS** Villalobos' Motion for Partial Summary Judgment (ECF No. 143) be **GRANTED**, Ryan's Pointe's Motion for Summary Judgment (ECF No. 144) be **DENIED**, the EEOC's Motion to Exclude Expert Testimony of Defendants' Vocational Rehabilitation

Consultant Joanna Vasquez (ECF No. 145) be **DENIED,** and the EEOC's Motion for Partial Summary Judgment (ECF No. 154) be **GRANTED**. Further, the Court **DENIES** the EEOC's Motion for Sanctions for Spoliation of Payroll Records and Personnel Files (ECF No. 146) and **GRANTS IN PART and DENIES IN PART** the EEOC's Motion for Sanctions for the Spoliation of ESI (ECF No. 166).

The Clerk shall send copies of this Memorandum, Recommendation, and Order to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on January 21, 2025.

Richard W. Bennett
United States Magistrate Judge